### UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA; STATE OF CALIFORNIA; STATE OF COLORADO; STATE OF CONNECTICUT; STATE OF DELAWARE; THE DISTRICT OF COLUMBIA; STATE OF FLORIDA; STATE OF GEORGIA; STATE OF HAWAII; STATE OF ILLINOIS; STATE OF INDIANA; STATE OF IOWA; STATE OF LOUISIANA; COMMONWEALTH OF MASSACHUSETTS; STATE OF MICHIGAN; STATE OF MINNESOTA; STATE OF MONTANA; STATE OF NEVADA; STATE OF NEW JERSEY; STATE OF NEW MEXICO; STATE OF NEW YORK; STATE OF NORTH CAROLINA; STATE OF OKLAHOMA; COMMONWEALTH OF PUERTO RICO; STATE OF RHODE ISLAND; STATE OF TENNESSEE; STATE OF TEXAS; STATE OF VERMONT; COMMONWEALTH OF VIRGINIA; AND STATE OF WASHINGTON. | : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : | No. 5:23-CV-00381-JKP  *QUI TAM ACTION* |
| EX. REL PATREK CHASE, | : : | |
| Plaintiffs, | : : : | |
| v. | : : : | |
| UT SOUTHWESTERN MEDICAL CENTER; PARKLAND HEALTH AND HOSPITAL SYSTEM; TRINITY HEALTH'S LOYOLA UNIVERSITY MEDICAL CENTER; SOUTHWEST TRANSPLANT ALLIANCE; LIVEONNY; NEW JERSEY SHARING NETWORK; and UNITED NETWORK FOR ORGAN SHARING. | : : : : : : : : : : : | |
| Defendants. | : : | |

### DEFENDANT LIVEONNY'S MOTION TO DISMISS
### THE SECOND AMENDED COMPLAINT

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ............................................................................................................................. 1

FACTUAL BACKGROUND .............................................................................................................. 2

    A.   Nondescript Allegations Mentioning OPOs as a Group. ................................................ 3

    B.   The Few Allegations Mentioning LiveOnNY. ............................................................... 3

       1.   Unsubstantiated Claims of Procuring "Non-Viable" Organs. ........................................ 4

       2.   Generalized Allegations of Misconduct Disguised as Fraud. ........................................ 4

       3.   Reliance on Stale, Second-Hand, and Publicly Disclosed Information. ......................... 4

PROCEDURAL BACKGROUND ........................................................................................................ 5

ARGUMENT ................................................................................................................................. 5

    A.   The SAC Fails to Allege Actionable Claims Against LiveOnNY. .................................. 5

       1.   Relator Fails to State Plausible FCA Claims Against LiveOnNY. ................................. 6

       2.   Relator Fails to Plead Plausible State Law Claims. ..................................................... 10

    B.   The Public Disclosure Requirement Bars the FCA Claims Against LiveOnNY. ............ 11

       1.   Public Disclosure Requirement. ................................................................................ 11

       2.   Relator Alleges Only Publicly Available Information. ................................................ 12

       3.   Relator is Not an "Original Source" of the Information. ............................................. 15

CONCLUSION .............................................................................................................................. 17

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)................................................................................5, 6

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007)................................................................................6

*United States ex rel. Booker v. Pfizer, Inc.,*
847 F.3d 52 (5th Cir. 2017) .................................................................6

*United States ex rel. Customs Fraud Investigations, L.L.C. v. Victaulic Co.,*
839 F.3d 242 (3d Cir. 2016), *cert denied*, 130 S. Ct. 107 (2017)............................9

*Fed. Recovery Servs., Inc. v. United States,*
72 F.3d 447 (5th Cir. 1995) ................................................................12, 16

*United States ex. rel. Fried v. West Ind. Sch. Dist.,*
527 F.3d 439 (5th Cir. 2008) .............................................................16

*United States ex rel. Grubbs v. Kanneganti,*
565 F.3d 180 (5th Cir. 2009) ..............................................................6, 7

*United States ex rel. Integra Med Analytics, L.L.C. v. Baylor Scott & White Health,*
816 F. App'x 892 (5th Cir. 2020) .......................................................6

*U.S. ex rel. Jamison v. McKesson Corp.,*
649 F.3d 322 (5th Cir. 2011) ............................................................12, 13

*United States ex rel. Montes v. Main Building Maintenance, Inc.,*
No. SA-16-CV-00523-JKP, 2020 WL 7624936 (W.D. Tex. Dec. 22, 2022)...........................6

*Norris v. Hearst Trust,*
500 F.3d 454 (5th Cir. 2007) .............................................................13

*United States ex rel. Nunnally v. W. Calcasieu Cameron Hosp.,*
519 F. App'x 890 (5th Cir. 2013) .......................................................7

*United States ex rel. Patel v. Catholic Health Initiatives,*
792 F. App'x 296 (5th Cir. 2019) .......................................................10

*United States ex rel. Rafizadeh v. Continental Common, Inc.,*
553 F.3d 869 (5th Cir. 2008) .............................................................6

*United States ex rel. Reagan v. E. Tex. Med. Ctr. Reg'l Healthcare Sys.*,
    384 F.3d 168 (5th Cir. 2004) .................................................................................16

*Segner v. Sinclair Oil & Gas Co.*,
    No. 3-11-CV-03606-F, 2012 WL 12884861 (N.D. Tex. Oct. 19, 2012), *order
    clarified*, No. 3-11-CV-03606-F, 2012 WL 12885056 (N.D. Tex. Nov. 9, 2012) ...................8

*United States ex rel. Solomon v. Lockheed Martin Corp.*,
    878 F.3d 139 (5th Cir. 2017) .................................................................................12

*United States ex rel. Spicer v. Westbrook*,
    751 F.3d 354 (5th Cir. 2014) ...................................................................................7

*Unimobil 84, Inc. v. Spurney*,
    797 F.2d 214 (5th Cir. 1986) ...................................................................................8

*United Health Servs., Inc. v. United States*,
    579 U.S. 176 (2016) ...............................................................................................7

*United States v. Kindred Healthcare, Inc.*,
    No. 1:18-cv-00806-RP, 2020 WL 7771217 (W.D. Tex. Dec. 30, 2020)..............................6, 9

**Rules**

Federal Rules of Civil Procedure 9(b) and 12(b)(6) ....................................................1, 6, 9, 10, 13

**Statutes**

31 U.S.C. § 3729(b)(1) .............................................................................................7

31 U.S.C. § 3729(b)(4) .............................................................................................7

31 U.S.C. § 3730(e)(4)(A) .....................................................................................12, 15

31 U.S.C. § 3730(e)(4)(B) .......................................................................................15

False Claims Act ......................................................1, 2, 3, 5, 6, 7, 8, 10, 11, 12, 13, 16, 17

iv

Pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6), Defendant LiveOnNY, Inc. ("LiveOnNY"), by and through its undersigned counsel, moves to dismiss the Second Amended Complaint ("SAC") filed by Relator Patrek Chase ("Relator").[1]

## INTRODUCTION

Defendant LiveOnNY respectfully moves to dismiss the SAC pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6). Although the SAC spans 120 pages and 534 paragraphs, it mentions LiveOnNY in just a handful of sparse, generalized allegations. These allegations, cobbled together from publicly available reports and the Relator's decade-old employment, fail to identify a single false claim LiveOnNY supposedly submitted to the Government. Instead, the SAC improperly lumps LiveOnNY into a group of defendants and levels vague accusations that amount to nothing more than his opinion disagreeing with its operational and spending decisions.

The SAC fails for three independent and fatal reasons. First, it wholly disregards the heightened pleading standard of Rule 9(b). It pleads no facts with the required particularity—the "who, what, when, where, and how"—of an alleged fraud. There is no link between the complained of conduct, such as office expenditures or executive salaries, and the submission of a specific, identifiable false claim for payment.

Second, the SAC does not allege that LiveOnNY acted with the requisite scienter required to state a claim under the False Claims Act ("FCA"). The FCA only holds liable parties who *knowingly* submit false claims to the Government. Even putting aside the lack of allegations that LiveOnNY submitted false claims, the SAC fails to allege that LiveOnNY did so knowingly.

Third, the SAC fails to plausibly allege materiality, a "demanding" and essential element of any FCA claim. Relator offers no factual basis to suggest that the Government would have

---

[1] Defendant LiveOnNY, Inc. was incorrectly identified in the SAC as only "LiveOnNY." *See* SAC at ¶ 26.

refused payment had it known of LiveOnNY's alleged regulatory non-compliance or business practices. To the contrary, the SAC's own allegations suggest that the Government continues to reimburse the very costs Relator challenges. Because the SAC presents nothing more than generalized quibbles and gripes rather than allegations of fraud, and fails to satisfy the basic pleading requirements for an FCA action, the claims against LiveOnNY must be dismissed with prejudice.

## FACTUAL BACKGROUND[2]

Relator alleges that he has had a series of jobs, including a stint with LiveOnNY. SAC at ¶ 19. While Relator fails to disclose his LiveOnNY employment dates, what he does allege shows that he left LiveOnNY over a decade ago, so there is no basis for a reasonable inference that he had access to any inside information as an original source.[3] *See id.* at ¶ 185. The SAC asserts general allegations of fraud against what Relator opines to be "seven of the worst organizations in organ donation." Specifically, Relator aims his fraud allegations at three organ transplant centers (Parkland Hospital Health and Hospital System, UT Southwestern Medical Center, and Trinity Health's Loyola University Medical Center), three organ procurement organizations (Southwest Transplant Alliance, New Jersey Sharing Network, and LiveOnNY), and the United Network for Organ Sharing. *Id.* at ¶ 5.

Organ procurement organizations ("OPOs") are responsible for recovering organs from organ donors, coordinating with transplant centers to place organs, and transporting the organs to the hospitals that perform the transplants. *Id.* at ¶ 4(b). OPOs are evaluated based on their success

---

[2] Except as otherwise noted, the facts stated herein are taken from the SAC. While LiveOnNY disagrees with the SAC's factual assertions, it understands that on a motion to dismiss, factual allegations in a complaint are taken as true.

[3] Relator in fact left LiveOnNY in November 2013.

in recovering as many organs as possible. *Id.* at ¶ 58. Collectively, they generate roughly $3 billion in revenue a year, stemming from three primary sources: "First, CMS reimburses all kidney procurement costs. Second, transplant centers pay [standard acquisition charge] fees to the OPOs for the organs that the transplant centers accept. For any Federal Healthcare patient – including individuals on Medicaid or TRICARE – these fees are reimbursed by Federal Healthcare. Third, the OPOs get fees from tissue processing centers for procuring [human cells, tissues, or cellular or tissue-based products]." *Id.* at ¶ 74. Included in the reimbursement OPOs receive for organ procurement is reimbursement for organs that are subsequently determined to be unsuitable for transplant. *Id.* at ¶ 63.

Relator claims that CMS grants OPOs monopolies on organ procurement in each OPO's designated service area. *Id.* at ¶ 55. Currently, there are 55 OPOs that each cover a different designated service area. *Id.* at ¶ 53. LiveOnNY is designated to cover Long Island, New York City, and southern New York, and is also headquartered in New York. *Id.* at ¶¶ 26, 161.

### A.    Nondescript Allegations Mentioning OPOs as a Group.

The SAC frequently resorts to improper group pleading, leveling accusations against OPOs as an undifferentiated monolith. For example, the SAC generally asserts that "OPOs, including Defendant OPOs," knowingly procure non-viable kidneys, fail to properly allocate costs, provide excessive salaries, and fail to pursue all potential organ donors. SAC at ¶¶ 166, 183, 193, 201. These broad-brush allegations are not tied to any specific conduct, employee, or time period at LiveOnNY.

### B.    The Few Allegations Mentioning LiveOnNY.

The handful of paragraphs that actually refer to LiveOnNY by name are a collection of conclusory accusations, business judgments, and recycled public information, none of which coalesce into a viable FCA claim. These allegations fall into three main categories:

1.    *Unsubstantiated Claims of Procuring "Non-Viable" Organs.*

The core of Relator's theory appears to be that LiveOnNY prioritizes procuring kidneys, even if non-viable, simply to bill for the procedure. SAC at ¶¶ 10, 177-78. He alleges that a CEO told a director to "fudge their data" at some unspecified time and that the organization incentivized "consents" over viable outcomes. SAC at ¶¶ 177-78. Critically, however, the SAC fails to identify a single fraudulent claim that was actually submitted to the Government as a result of this alleged policy.

Indeed, the SAC's own allegations undermine this theory. It elsewhere concedes that OPOs are reimbursed for procurement efforts even when organs are "subsequently determined to be unsuitable for transplant." SAC ¶ 63. This suggests that billing for such work is a recognized part of the reimbursement structure, not an inherently fraudulent act.

2.    *Generalized Allegations of Misconduct Disguised as Fraud.*

A second category of allegations amounts to nothing more than Relator's disagreement with LiveOnNY's business judgments and operational expenditures. The SAC complains about the cost of LiveOnNY's office space, executive compensation, and the use of lobbyists. SAC ¶¶ 184, 192, 195-96. It also points to a CEO bonus that was allegedly paid over a decade ago, around the 2010-2013 timeframe. SAC ¶ 185.

These allegations fail to connect any of these expenditures to a false statement. The SAC offers no facts to suggest these costs were not properly disclosed on cost reports, that they violated a specific and material condition of payment, or that they were anything other than business decisions with which Relator disagrees.

3.    *Reliance on Stale, Second-Hand, and Publicly Disclosed Information.*

Finally, the SAC makes clear that its allegations are not based on current, first-hand knowledge of any fraudulent scheme. Relator appears to have left his employment at LiveOnNY

over a decade ago. SAC ¶ 185. Many of his "insider" allegations are either explicitly second-hand (*e.g.*, what a CEO allegedly told a director) or based on publicly available information. For instance, the SAC extensively quotes a 2018 report by another OPO, "Gift of Life," to critique LiveOnNY's management and culture. SAC ¶¶ 215-16.

<h2 align="center">PROCEDURAL BACKGROUND</h2>

Relator filed the intial *qui tam* complaint in this action under seal on March 28, 2023.  (Dkt. #1). While the case remained sealed, he filed an amended complaint on July 16, 2024. (Dkt. #16). On June 20, 2025, the Government declined to intervene. (Dkt. #25). After obtaining leave from the Court, Relator filed another amendment, the SAC, on August 1, 2025. (Dkt. #37). In granting Relator leave to do so, the Court advised that it "will not allow any further amendments of the Complaint." (Dkt. #33).

<h2 align="center">ARGUMENT</h2>

Relator's claims lack sufficient specificity to allege a false claim at all, let alone sufficient specificity to allege the requisite scienter and materiality. This alone is fatal to Relator's FCA and state law claims. But the FCA claims are further deficient because even Relator's sparsely pled allegations pertaining to LiveOnNY were gleaned from publicly available sources, violating the FCA's requirement that Relator be the original source of the information.

### A.     The SAC Fails to Allege Actionable Claims Against LiveOnNY.

To survive a motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. However, in assessing the plausibility of a complaint, a court need not credit either the

5

plaintiff's "bald allegations" or "legal conclusions," particularly where the complaint is "devoid of further factual enhancement." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

In addition to Rule 12(b)(6)'s plausibility requirement, "actions brought under the FCA must satisfy the heightened pleading standard set forth in Federal Rule of Civil Procedure 9(b)," which requires a party to "state with particularity the circumstances constituting fraud or mistake." *United States ex rel. Montes v. Main Building Maintenance, Inc.*, No. SA-16-CV-00523-JKP, 2020 WL 7624936, at *2 (W.D. Tex. Dec. 22, 2022); *United States ex rel. Integra Med Analytics, L.L.C. v. Baylor Scott & White Health*, 816 F. App'x 892, 896 (5th Cir. 2020). Rule 9(b) generally prohibits group pleading. *United States v. Kindred Healthcare, Inc.*, No. 1:18-cv-00806-RP, 2020 WL 7771217, at *6 (W.D. Tex. Dec. 30, 2020).

"It is well settled that '[e]vidence of an actual false claim is 'the *sine qua non* of a False Claims Act violation.'" *United States ex rel. Booker v. Pfizer, Inc.*, 847 F.3d 52, 57 (5th Cir. 2017) (superseded on different grounds). "Because the linchpin of an FCA claim is a false claim, 'the time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what that person obtained thereby must be stated in a complaint alleging violation of the FCA in order to satisfy Rule 9(b).'" *United States ex rel. Rafizadeh v. Continental Common, Inc.*, 553 F.3d 869, 873 (5th Cir. 2008). And if the relator "cannot allege the details of an actually submitted false claim," he must instead allege "particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009).

> 1.    *Relator Fails to State Plausible FCA Claims Against LiveOnNY.*

The SAC's broad, conclusory allegations fall far short of stating a plausible claim against LiveOnNY, especially given Rule (9)(b)'s heightened pleading requirement. Specifically, Relator's purported allegations of misconduct by LiveOnNY do not allege that LiveOnNY

submitted a false claim to the Government, much less that it did so with the requisite scienter and materiality, or that its misconduct caused the Government to pay any false claim.

As noted above, claims I through III assert violations of § 3729(a)(1) of the FCA. Section 3729(a)(1) "makes liable any person who 'knowingly presents, or causes to be presented' a false claim to the Government." *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 188 (5th Cir. 2009). The Fifth Circuit requires a relator to plead four elements to state a claim under the FCA: "(1) a false statement or fraudulent course of conduct; (2) that was made or carried out with the requisite scienter; (3) that was material; and (4) that caused the government to pay out money (i.e., that involved a claim)." *United States ex rel. Spicer v. Westbrook*, 751 F.3d 354, 365 (5th Cir. 2014). The "requisite scienter" under this test requires that the defendant "(i) ha[ve] actual knowledge of the information; (ii) act[] in deliberate ignorance of the truth or falsity of the information; or (iii) act[] in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1). In addition, the FCA defines "material" as "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4). The Supreme Court has emphasized that appropriate inquiry on the materiality requirement is "whether the defendant knowingly violated a requirement that the defendant knows is material to the Government's payment decision." *United Health Servs., Inc. v. United States*, 579 U.S. 176, 181 (2016).

Here, even viewing the SAC in the light most favorable to Relator and accepting the allegations as true, the SAC fails to assert even bare allegations that LiveOnNY presented a false claim to the Government, much less that it did so knowingly. Instead, the SAC consists of wholly conclusory allegations broadly alleging that LiveOnNY submits false claims to the Government. *See United States ex rel. Nunnally v. W. Calcasieu Cameron Hosp.*, 519 F. App'x 890, 893 (5th Cir. 2013) (affirming dismissal of FCA case where "allegations of a scheme to submit fraudulent

claims are entirely conclusory, do not offer factual information with sufficient indicia of reliability, and do not demonstrate a strong inference that the claims were presented to the Government").

For example, the SAC alleges that "[t]he three OPO defendants, NJ Sharing Network, LiveOnNY, and Southwest Transplant Alliance, are all defrauding the United States by charging for unnecessary kidneys, including costs on their cost report that are not reasonable and necessary, and accepting kickbacks for tissue collection beyond reasonable costs." SAC at ¶ 158. But nowhere does the SAC allege any details about the allegedly false claims, including, for example, when LiveOnNY submitted these allegedly false claims, who submitted them, the contents of the allegedly false claims, and what LiveOnNY allegedly obtained from the purportedly false claims. Instead, the SAC generally asserts sweeping "bad behavior" like hiring lobbyists, paying staff bonuses, having a nice office, and, in contradictory fashion, alleging both that LiveOnNY fails to recover enough organs (¶ 201 "OPOs regularly fail to try to recover every organ") and too many organs (¶ 166 "Given the guaranteed reimbursement for kidneys, OPOs, including Defendant OPOs, instruct their staff to procure the kidney even when the OPO knows the kidney is not viable.").

Relator's attempt to lump all OPOs into a group cannot disguise the flaws in the SAC's facial failure to put LiveOnNY on notice of any actual FCA claim against it. *See Unimobil 84, Inc. v. Spurney*, 797 F.2d 214, 217 (5th Cir. 1986) ("To state a case for fraud, however, requires a plaintiff to allege with particularity the defendant's acts which the plaintiff contends amount to fraud."); *Segner v. Sinclair Oil & Gas Co.*, No. 3-11-CV-03606-F, 2012 WL 12884861, at *2 (N.D. Tex. Oct. 19, 2012), *order clarified*, No. 3-11-CV-03606-F, 2012 WL 12885056 (N.D. Tex. Nov. 9, 2012) (holding a cause of action for "participation in a fraudulent scheme requires the plaintiff to specifically link each defendant to the schemes alleged"). A relator cannot rely on conclusions, opinions, and group pleading to assert a smattering of ills and ask the Court to find a

fraud in there somewhere. *See Kindred Healthcare*, 2020 WL 7771217, at *6 ("Attributing discrete actions to all defendants without explaining the basis for the grouping or distinguishing between the relevant conduct is improper under Rule 9(b)."); *see also United States ex rel. Customs Fraud Investigations, L.L.C. v. Victaulic Co.*, 839 F.3d 242, 260 (3d Cir. 2016), *cert denied*, 130 S. Ct. 107 (2017) (holding that a party "insist[ing] there is evidence of fraud in there, somewhere, while completely failing to identify" the fraudulent activity is not enough under Fed. R. Civ. P. 9(b)").

Furthermore, there is no hint of indicia, much less reliable indicia, in the SAC that could lead to a strong inference that LiveOnNY knowingly submitted false claims. For example, the SAC accuses LiveOnNY of procuring non-viable organs "solely to include the procedure on their cost report." *Id.* at ¶ 10. But LiveOnNY is an organization dedicated to saving as many lives as possible which directly correlates with procuring as many organs as possible. And the SAC even acknowledged that "OPOs are required to try to recover every organ possible." *Id.* at ¶ 200. Through this lens, Relator's incredible assertion that LiveOnNY instead seeks to procure as many organs as possible to maximize its reimbursement from the Government is not only illogical but, as above, wholly unsupported by factual allegations in the SAC. *See also id.* at ¶¶ 208-210 (asserting generally that LiveOnNY collected revenue from tissue donation but not alleging a single thing that LiveOnNY did wrong regarding tissue donation).

In addition, Relator's complete failure to allege that LiveOnNY *knowingly* submitted false claims to the Government inherently means he failed to meet the FCA's scienter requirement. The SAC only alleges generally that LiveOnNY submitted false claims to the Government. But it is silent on LiveOnNY's scienter when allegedly submitting these claims, which alone warrants dismissal of Relator's FCA claims against LiveOnNY.

Moreover, Relator also fails to satisfy the FCA's materiality requirement, neglecting to include any allegations, even broadly, that LiveOnNY made misrepresentations in its allegedly

false claims that influenced the Government to pay out those claims. This failure to meet the materiality requirement is additionally fatal to Relator's FCA claims. *See United States ex rel. Patel v. Catholic Health Initiatives*, 792 F. App'x 296, 301 (5th Cir. 2019) (affirming dismissal of the FCA claim after finding that the relator failed to satisfy the materiality requirement because "nothing in [the relator's] filings suggests that the government would stop the flow of funds to [the defendant] if it knew the truth").

Because Relator fails to allege in any of the over 300 background paragraphs in the SAC that LiveOnNY presented, or caused to be presented, false claims to the Government, much less allege such with the requisite particularity, and further fails to satisfy the FCA's scienter and materiality requirements, his FCA claims do not survive Rule 9(b)'s heightened pleading requirement. LiveOnNY's Motion to Dismiss the Second Amended Complaint must be granted on claims I through III.

### 2. *Relator Fails to Plead Plausible State Law Claims.*

Because the federal FCA claims must be dismissed, the Court should not exercise supplemental jurisdiction over the SAC's state law claims.  In any event, for the same reasons the FCA claims are insufficient, the state law claims also fail. In claims V through XXXIV, Relator asserts violations of 29 states and territories' false claims acts, stemming from each of these states and territories' payment of the allegedly false claims. But the SAC contains no allegations that allegedly false claims were submitted to these various states and territories, much less that the states and territories paid the claims. And while the SAC acknowledges that LiveOnNY is an OPO covering only Long Island, New York City, and southern New York, it does not allege LiveOnNY submitted claims, or even false claims, to New York or that New York paid the allegedly false claims. *See id.* at ¶ 161.  And it certainly does not allege that LiveOnNY submitted claims to and received payment from California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii,

Illinois, Indiana, Iowa, Louisiana, Massachusetts, Michigan, Minnesota, Montana, Nevada, New Jersey, New Mexico, North Carolina, Oklahoma, Rhode Island, Tennessee, Texas, Vermont, Virginia, Washington, the District of Columbia, and Puerto Rico.

Because the SAC's lack of any allegations that LiveOnNY submitted false claims to and received payment from these 29 states and territories is fatal to the state law claims, LiveOnNY's Motion to Dismiss the Second Amended Complaint must also be granted on claims V through XXXIV.

### B.    The Public Disclosure Requirement Bars the FCA Claims Against LiveOnNY.

In addition to the SAC not containing any well-pleaded facts sufficient to state a claim, the information that is contained in the SAC all derives from publicly available sources. This is fatal to the claims. A relator cannot just read the newspaper and then run out and file a relator complaint.

### 1.    *Public Disclosure Requirement.*

The FCA provides in pertinent part that:

The court shall dismiss an action or claim under this section, unless opposed by the Government, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed—

(i) in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party;

(ii) in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or

(iii) from the news media,

unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

31 U.S.C. § 3730(e)(4)(A). Courts in the Fifth Circuit consider an argument under the public disclosure bar as a jurisdictional issue "properly treated as a motion for summary judgment." *See U.S. ex rel. Jamison v. McKesson Corp.*, 649 F.3d 322, 326 (5th Cir. 2011).

To determine whether this public disclosure requirement bars claims under the FCA, the Fifth Circuit devised a three-part test: "1) whether there has been a 'public disclosure' of allegations or transactions, 2) whether the *qui tam* action is 'based upon' such publicly disclosed allegations, and 3) if so, whether the relator is the 'original source' of the information." *Fed. Recovery Servs., Inc. v. United States*, 72 F.3d 447, 450 (5th Cir. 1995). In determining whether the action is "based upon" publicly disclosed allegations, courts "compare the allegations contained in [the] complaint with public disclosures available at the time the complaint was filed." *United States ex rel. Solomon v. Lockheed Martin Corp.*, 878 F.3d 139, 144 (5th Cir. 2017). Critically, the Fifth Circuit has held that "the public disclosures need not name particular defendants so long as they 'alerted the government to the industry-wide nature of the fraud and enabled the government to readily identify wrongdoers through an investigation.'" *United States ex rel. Jamison v. McKesson Corp.*, 649 F.3d 322, 329 (5th Cir. 2011).

### 2. Relator Alleges Only Publicly Available Information.

Here, Relator's allegations pertaining to LiveOnNY are identical to disclosures made by public sources and are thus barred by the FCA's public disclosure bar. Not only were these public disclosures available at the time the SAC was filed, but, in one case, the public source is *actually cited* in the SAC itself. *See* SAC at ¶ 215. A comparison of the disclosures made by public sources with the SAC's allegations concerning LiveOnNY reveals that the former provided the source material for the latter:[4]

---

[4] These allegations are more fully set out in the Factual Background section above. Because each of the sources cited herein are matters of public record, the Court may consider them at the motion to dismiss stage. *See Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) ("[I]t is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record.") In any event, courts in the Fifth Circuit consider an argument under the public disclosure bar as a jurisdictional issue "properly treated as a motion for summary judgment." *See U.S. ex rel. Jamison v. McKesson Corp.*, 649 F.3d 322, 326 (5th Cir. 2011). The treatment of the instant motion as a motion for summary judgment, however, only applies to LiveOnNY's argument concerning the

| Allegation | Public Source |
|---|---|
| LiveOnNY regularly charges for the procurement of non-viable kidneys solely to include the procedure on its cost reports (SAC at ¶¶ 10, 158, 171, 177-78, 180) | AOPO Highlights Article[5] |
| LiveOnNY was a Tier 3 - Failing OPO and the fourth worst performing OPO in the country (SAC at ¶ 161) | Eyewitness News Article[6] |
| LiveOnNY billed CMS for the design and real estate costs for its New York real estate (SAC at ¶ 184) | Medicare Provider Reimbursement Manual;[7] Congressional Hearing[8] at p. 9 |

| Allegation | Public Source |
|---|---|
| LiveOnNY fought CMS decertification by suing CMS with CMS's own money (SAC at ¶ 185) | Medicare Provider Reimbursement Manual (*supra* at n.6); February 2019 Washington Post Article;[9] Congressional Hearing (*supra* at n.7) at p. 9 |

public disclosure bar. LiveOnNY's arguments concerning Relator's failure to state the FCA and state law claims under Rules 9(b) and 12(b)(6) are judged under the motion to dismiss standard.

[5] *See AOPO Highlights Disturbing Crisis: Thousands of Kidney Patients who Died Waiting for Organs in 2023 Could Have Been Saved*, AOPO (Sept. 12, 2024), https://aopo.org/aopo-highlights-disturbing-crisis-thousands-of-kidney-patients-who-died-waiting-for-organs-in-2023-could-have-been-saved (noting kidneys offered by OPOs were rejected by transplant centers).

[6] *See Exclusive: New York agency gave bonuses to employees after meeting organ 'goal,' emails show*, ABC 7: EYEWITNESS NEWS (Nov. 16, 2023), https://abc7ny.com/post/organ-donation-bonus-liveonny-investigation/14069984 ("CMS classifies LiveOnNY as a Tier 3 OPO[.]")

[7] *See Medicare Provider Reimbursement Manual*, DHHS (April 1, 2016), https://www.cms.gov/Regulations-and-Guidance/Guidance/Transmittals/downloads/R471pr1.pdf (stating CMS reimburses OPOs generally, so anything an OPO spends money on can be "billed" to CMS).

[8] *See The Urgent Need to Reform the Organ Transplantation System to Secure More Organs for Waiting, Ailing, and Dying Patients*, Hrg. before H. Comm. On Oversight and Reform, 117 Cong. (May 4, 2021), https://www.congress.gov/117/chrg/CHRG-117hhrg44569/CHRG-117hhrg44569.pdf (noting 100% of OPOs' costs are reimbursed by Medicare).

[9] *See* Kimberly Kindy & Lenny Bernstein, *Despite Low Performance, Organ Collection Group Gets New Federal Contract*, WASHINGTON POST (Feb. 5, 2019), https://www.washingtonpost.com/national/despite-low-performance-organ-collection-group-gets-new-federal-contract/2019/02/04/9b9ba2aa-2895-11e9-b2fc-721718903bfc_story.html (discussing how LiveOnNY successfully fought the threatened shut down).

| LiveOnNY regularly pays lobbyists, includes these costs on its cost reports, and is reimbursed for these costs by CMS (SAC at ¶ 192) | Medicare Provider Reimbursement Manual (*supra* at n.6); Project on Government Oversight Article;[10] Congressional Hearing (*supra* at n.7) at p. 9 |
|---|---|
| LiveOnNY provides excessive salaries and bonuses (SAC at ¶¶ 185, 193, 195-96) | 2021 990 Form;[11] Congressional Hearing (*supra* at n.7) at p. 9 |
| LiveOnNY does not recover every available organ (SAC at ¶¶ 202-04) | Bridgespan Group Report;[12] December 2018 Washington Post Article[13] |
| Allegation | Public Source |
| LiveOnNY prioritizes tissue collection over organ procurement (SAC at ¶¶ 208, 210) | Gift of Life Report[14] at p. 31; Costly Effects Article[15] |

---

[10] *See* Adam Zagorin, *Heartless: Organ Donation Contractors Lobby Against a Popular Health Care Initiative While Pocketing Pandemic Relief Funds*, PROJECT ON GOVERNMENT OVERSIGHT (Oct. 5, 2020), https://www.pogo.org/investigations/heartless-organ-donation-contractors-lobby-against-a-popular-health-care-initiative-while-pocketing-pandemic-relief-loans (detailing OPOs' use of and amounts spent on lobbying).

[11] *See Full text of "Full Filing" for fiscal year ending Dec. 2021*, PROPUBLICA, https://projects.propublica.org/nonprofits/organizations/132945229/202203189349312645/full (last visited Sept. 4, 2025) (disclosing amount LiveOnNY spent on "[s]alaries, other compensation, [and] employee benefits" in 2021).

[12] *See Reforming Organ Donation in America: Saving 25,000 Lives per Year and $13 Billion in Taxpayer Funds over Five Years*, BRIDGESPAN GROUP (Jan. 2019), https://www.bridgespan.org/getmedia/415a0075-8b2f-4441-ab43-275c2a111fa1/reforming-organ-donation-in-america-12-2018.pdf ("OPOs are evaluated on the number of organs procured per donor, which leads to older single-organ donors being overlooked.")

[13] *See* Kimberly Kindy, *Underperforming in New York: Nonprofit Struggles to Recover Transplantable Organs*, WASHINGTON POST (Dec. 20, 2018), http://www.washingtonpost.com/national/underperforming-in-new-york-nonprofit-struggles-to-recover-transplantable-organs/2018/12/20/55475aea-fa5c-11e8-863c-9e2f864d47e7_story.html ("Amid a nationwide shortage of transplantable organs, industry statistics show that organ procurement organizations like LiveOnNY lose a quarter of their most promising cases because they are unable to secure consent from the families of prospective donors — a loss of about 3,000 donors a year.")

[14] The Gift of Life Report is publicly available as part of an article that was published on April 28, 2023. *See* Malena Carollo, *A Crucial Link in the Nation's Organ Donation Process Is Failing*, THE MARKUP (April 28, 2023), https://themarkup.org/organ-failure/2023/04/28/a-crucial-link-in-the-nations-organ-donation-process-is-failing. Notably, the allegations regarding the Gift of Life Report were not included in the pleadings until Relator filed the SAC on August 1, 2025.

[15] *See The Costly Effects of an Outdated Organ Donation System*, Organ Donation Reform (Aug. 2023), https://costlyeffects.organdonationreform.org ("For many OPOs, tissue recovery and

| LiveOnNY is a mismanaged organization (SAC at ¶¶ 214-16) | Gift of Life Report at pp. 3, 5, 22 |
| --- | --- |

### 3.      Relator is Not an "Original Source" of the Information.

Moreover, the remaining allegations asserted in the SAC against LiveOnNY, namely (1) that LiveOnNY did not implement any of the changes suggested in the Gift of Life Report (SAC at ¶ 217), (2) that LiveOnNY improperly classifies organs as "rush cases" so that New York area hospitals accept its organs out of order from the transplant list (*id.* at ¶ 218), and (3) that LiveOnNY ties line-level employees' compensation to the number of organs transplanted and obtained (*id.* at ¶ 220), are also barred by the public disclosure bar because there is no plausible inference that Relator was the original source of this information. An "original source" is someone who:

> (1) prior to a public disclosure under section (e)(4)(A) has voluntarily disclosed to the Government the information on which the allegations or transactions in a claim are based, or (2) who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing an action[.]

31 U.S.C. § 3730(e)(4)(B).

The SAC has no allegations in support of either prong. "Even if [Relator] uncovered some nuggets of new, *i.e.*, non-public, information, his claims of fraud are based at least in part on allegations already publicly disclosed. Therefore, [Relator's] *qui tam* suit is based on publicly disclosed information." *United States ex. rel. Fried v. West Ind. Sch. Dist.*, 527 F.3d 439, 442 (5th Cir. 2008); *Fed. Recovery Servs., Inc. v. United States*, 72 F.3d 447, 452 (5th Cir. 1995) (requiring the relator to provide "qualitatively different information than what had already been discovered"). And in any event, Relator's allegations have nothing to do with the purported false claims and thus do not support Relator's FCA claims.

---

processing has become their core business, while lifesaving organ recovery has been largely deprioritized.")

Relator broadly alleges that he worked for LiveOnNY without alleging any specifics about his employment, including when he worked there. The SAC, however, makes clear that Relator has not worked at LiveOnNY for quite some time.[16] As such, because Relator has not had access to any nonpublic information relating to LiveOnNY in over a decade, he could not have been the original source of the information. Indeed, this is apparent on the face of the SAC, where Relator alleges "the director of Quality Control [at LiveOnNY] was told by the CEO of LiveOnNY to 'fudge their data' in order to cover up the number of non-viable kidneys LiveOnNY recovered." *Id.* at ¶ 177. Relator cannot possibly argue he is the original source of this information, as it is clear based on the plain language of the SAC that he was not party to this conversation and could only have heard of it second hand.

One of the purposes of the FCA's public disclosure bar is "preventing parasitic suits by opportunistic late-comers who add nothing to the exposure of fraud." *See United States ex rel. Reagan v. E. Tex. Med. Ctr. Reg'l Healthcare Sys.*, 384 F.3d 168, 178 (5th Cir. 2004). But here, Relator, through the SAC, is attempting to do exactly what the public disclosure bar aims to prevent: alleging facts purporting to constitute fraud that any person could glean from a quick internet search in an attempt to "blow the whistle" on life saving organizations such as LiveOnNY. Because his allegations are nothing more than obvious, public facts, Relator's attempt at recovery under the FCA must be stopped. LiveOnNY's Motion to Dismiss the Second Amended Complaint should be granted.

---

[16] Specifically, the SAC alleges that Relator worked at LiveOnNY towards the beginning of his 15-year career in organ donation. *See* SAC at ¶ 19. It further alleges that after he left LiveOnNY, he worked for another OPO and then an organ transplant center before being recruited by a second organ transplant center in 2019. *Id.* at ¶ 20. Based on this information, it is apparent that even in 2019, Relator had not worked at LiveOnNY for several years, as he had held two separate jobs since he left its employ. Moreover, the only specific timeframe provided in the SAC relating to LiveOnNY is "the 2010-2013 timeframe." *Id.* at ¶ 185. And in fact, Relator left LiveOnNY's employ in November 2013.

**CONCLUSION**

For the foregoing reasons, Defendant LiveOnNY respectfully requests this Court grant its

Motion to Dismiss the Second Amended Complaint and dismiss Relator's claims against it with

prejudice.

Respectfully submitted,

Dated: September 11, 2025          By:    _/s/ Steve A. Chiscano_____
                                         Steve Alfonso Chiscano
                                         State Bar No. 24001882
                                         schiscano@gcaklaw.com
                                         David S. Angulo
                                         State Bar No. 24001659
                                         Nadeen Abou-Hossa
                                         State Bar No. 24115449
                                         schiscano@gcaklaw.com
                                         **GONZALEZ CHISCANO ANGULO
                                         KASSON, P.C.**
                                         9601 McAllister Freeway, Suite 401
                                         San Antonio, TX 78216
                                         (210) 569-8500   (210) 569-8490 (fax)

                                         David Rodkey
                                         (*pro hac vice* pending)
                                         drodkey@dilworthlaw.com
                                         Ira Neil Richards
                                         (*pro hac vice* pending)
                                         irichards@dilworthlaw.com
                                         **DILWORTH PAXSON LLP**
                                         1650 Market Street, Suite 1200
                                         Philadelphia, PA, 19103
                                         (215) 575-7000 | (215) 754-4603 (fax)
                                         **COUNSEL FOR LIVEONNY**

17

## CERTIFICATE OF CONFERENCE

I certify that Defendant LiveOnNY complied with this Court's Standing Order and informed Relator of the deficiencies in the Second Amended Complaint and the bases of its anticipated motion to dismiss. Counsel for LiveOnNY sent Relator's counsel a letter outlining these deficiencies with the law on August 28, 2025 and discussed these deficiencies with Relator's counsel via telephone on September 2, 2025.

/s/ David Rodkey
David Rodkey

## CERTIFICATE OF SERVICE

I certify that on September 11, 2025, pursuant to the Federal Rules of Civil Procedure, the foregoing was served through the Court's CM/ECF System.

/s/ David S. Angulo
David S. Angulo