UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

UNITED STATES, EX REL; AND
STATE OF TEXAS,

   *Plaintiffs*,

PATREK CHASE,

*Relator*,

                                                CASE NO.  SA-23-CV-00381-JKP

**v.**

PARKLAND HEALTH AND
HOSPITAL SYSTEM, LOYOLA
UNIVERSITY MEDICAL CENTER,
SOUTHWEST TRANSPLANT
ALLIANCE, LIVEONNY, NEW
JERSEY SHARING NETWORK,
UNITED NETWORK FOR ORGAN
SHARING,

   *Defendants*.

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant United Network for Organ Sharing's ("UNOS") Motion to Dismiss for Failure to State a Claim. *ECF Nos. 72,92*. Plaintiff/Relator Patrek Chase responded. *ECF No. 86*. Upon consideration, the Motion to Dismiss is **GRANTED**.

## FACTUAL BACKGROUND

On March 28, 2023, Relator Patrek Chase filed this action in the name of the United States and many individual states alleging violation of the False Claims Act (FCA).[1] *ECF No. 1*. In the Second Amended Complaint, Chase names as Defendants entities in the organ donation

---

[1] "The FCA may be enforced not just through litigation brought by the Government itself, but also through civil qui tam actions that are filed by private parties, called relators, in the name of the Government." *Kellogg Brown & Root Servs., Inc. v. United States ex rel. Carter*, 575 U.S. 650, 653 (2015)(quotations omitted).

1

and transplant system which include transplant centers, Organ Procurement Organizations (OPOs), and the United Network for Organ Sharing (UNOS).[2] *ECF No. 37*. Congress created the national organ allocation system and charged the Secretary of the U.S. Dept. of Health and Human Services (HHS) with oversight of organ procurement and transplantation nationwide. 42 U.S.C. §§ 273–274e, *National Organ Transplant Act ("NOTA") of 1984*. HHS delegates much of its authority under NOTA to the Organ Procurement Transplantation Network (OPTN), which is comprised of volunteer medical professionals, transplant families, patients, and individuals with an interest in organ donation and transplantation. OPTN, as a collective body, considers, debates, approves, and implements policies relating to transplantation issues. Specifically, OPTN operates and monitors an equitable system for allocating organs, maintains a waiting list of potential recipients, matches potential recipients with donor organs, and works to increase the supply of donated organs. OPTN establishes and maintains training and experience criteria for designated transplant personnel and monitors compliance with federal laws and OPTN policies.

UNOS is a private, nonprofit corporation which serves as the OPTN contractor under a federal contract with HHS. Under this contract, UNOS provides the infrastructure and operational support that allows OPTN to carry out its assigned responsibilities, UNOS maintains the national organ donation waiting lists (the UNOS UNet portal database), supports OPTN volunteers in policy development and compliance oversight, maintains and analyzes data on behalf of HRSA, and facilitates investigations of reported safety incidents.

In general terms, Chase alleges the named Defendants fraudulently billed Medicare and Medicaid (Federal Healthcare), or caused fraudulent billing, in their role in the overall system of procuring and transplanting kidneys to patients in need. UNOS is a corporate entity that does not

---

[2] Chase named numerous entities and persons in the original Complaint. However, the only remaining Defendants are: LiveOnNY, New Jersey Sharing Network, Parkland Health and Hospital System, Southwest Transplant Alliance, Loyola University Medical Center, and United Network for Organ Sharing.

provide any health care services, clinical decision-making, or hospital oversight. The outcome of UNOS's investigations remain the responsibility of volunteer physicians, OPOs, HRSA, and OPTN leadership. UNOS collects a registration fee for OPTN and separately charges a UNOS fee to transplant centers for each candidate added to the transplant waiting list; however, UNOS does not submit any charges related to the fees to any federal healthcare program.

Chase alleges UNOS "double-charges" by charging transplant centers a fee for every organ placed on the transplant list in addition to the OPTN fee, even though the UNOS fee does not entitle transplant centers to any additional services beyond those already provided by under the OPTN fee. *ECF No. 37, pars. 245-49*. Chase alleges that prior to October 2021, the UNOS fee was included on the same invoice as the OPTN fee, causing transplant centers to believe the UNOS fee was part of the mandatory OPTN fee. Chase alleges every transplant center passes both fees on to Federal Healthcare for reimbursement. *Id*. In response, UNOS claims the UNOS fee it collects from transplant centers is a monthly charge based on work it provides by including analysis and providing data-related services to all transplant community members; the OPTN fee is for separate and independent services. Chase contends this explanation fails because UNOS, through its contract with the HHS to serve OPTN, is already required to provide analysis and data-related services to all transplant community members. Consequently, Chase contends UNOS fraudulently bills transplant centers, who in turn, unwittingly fraudulently bill Federal Healthcare. *Id*.

Chase asserts additional allegations that UNOS failed to oversee OPOs and organ donation in the way required by the law and according to its contract with the HHS. *ECF No. 37, pars. 250-305*. Instead, UNOS conspired with the transplant-community membership it oversees to hide issues from HHS and attempt to avoid accountability for the widespread fraud in organ

donation. Chase alleges UNOS ignores reported instances of misconduct and retaliates against those who report problems, stating, "[i]t is widely known in the industry that if someone raises a complaint to UNOS, they are likely to be frozen out of the organ donation world entirely. Therefore, UNOS discourages any complaints in the first place." Finally, Chase contends UNOS does not review OPO costs, nor does it investigate unallowed cost expenditures by OPOs.

Chase filed this action on March 28, 2023. On June 20, 2025, the United States declined to intervene in this action. *ECF No. 25*. On June 25, 2025, the State of Texas and all other Plaintiff states declined to intervene in this action. *ECF No. 27*. This Court unsealed this action. On August 1, 2025, this Court permitted Chase to file the live Second Amended Complaint. Due to the age of the case at that time, this Court cautioned Chase no further amendments would be allowed. *ECF Nos. 33,37*.

Construing these allegations against UNOS in the Second Amended Complaint broadly, the Court concludes Chase contends UNOS committed the following violations of the False Claims Act: (1) UNOS causes fraudulent billing by double charging, that is, it charges transplant centers a fee in addition to the OPTN fee under its contract with HHS for listing donors, and this fee is passed on to Federal Healthcare; (2) UNOS did not satisfy its contractual obligation to HHS by failing to oversee OPOs and organ donation in the way required by the law and the contract (described by Chase as "catch and kill"); (3) UNOS failed to correct cybersecurity problems with the UNet platform, thereby "shirk[ing] its obligation to protect patients' confidential health information" in violation of 31 U.S.C. § 3729(a)(1)(A) and (B); (4) reverse false claims in violation of § 3729(a)(1)(G), and (5) mirror violations of numerous state laws. In his Response to the Motion to Dismiss, Chase withdraws the causes of action based upon failure to correct cybersecurity in violation of § 3729(a)(1)(A) and § 3729(a)(1)(B) and reverse false

4

claims in violation of § 3729(a)(1)(G). *ECF No. 86, p. 22*. Consequently, the Court dismisses these asserted causes of action and will not discuss the waived and withdrawn allegations against UNOS supporting these dismissed causes of action.

## LEGAL STANDARD

To provide opposing parties fair notice of the asserted cause of action and the grounds upon which it rests, every pleading must contain a short and plain statement of the cause of action which shows the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To satisfy this requirement, the Complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555-558, 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The focus is not on whether the plaintiff will ultimately prevail, but whether that party should be permitted to present evidence to support adequately asserted causes of action. *Id.*; *Twombly*, 550 U.S. at 563 n.8. Thus, to warrant dismissal under Federal Rule 12(b)(6), a Complaint must, on its face, show a bar to relief or demonstrate "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Fed. R. Civ. P. 12(b)(6); *Clark v. Amoco Prod. Co.,* 794 F.2d 967, 970 (5th Cir. 1986). Dismissal "can be based either on a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Frith v. Guardian Life Ins. Co.,* 9 F.Supp.2d 734, 737–38 (S.D.Tex. 1998). "Thus, the court should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint." *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999); *Vander Zee v. Reno,* 73 F.3d 1365, 1368 (5th Cir. 1996).

In assessing a Motion to Dismiss under Federal Rule 12(b)(6), the Court's review is limited to the Complaint and any documents attached to the Motion to Dismiss, which are also referred to in the Complaint and central to the plaintiff's claims. *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014). When reviewing the Complaint, the "court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)(quoting *Jones*, 188 F.3d at 324).

A complaint should only be dismissed under Federal Rule 12(b)(6) after affording every opportunity for the plaintiff to state a claim upon which relief can be granted, unless it is clear amendment would be futile. *Foman v. Davis,* 371 U.S. 178, 182 (1962); *Hitt v. City of Pasadena,* 561 F.2d 606, 608–09 (5th Cir. 1977); *DeLoach v. Woodley,* 405 F.2d 496, 496-97 (5th Cir. 1968). Consequently, when it appears a more careful or detailed drafting might overcome the deficiencies on which dismissal is sought, a Court must allow a plaintiff the opportunity to amend the Complaint. *Hitt,* 561 F.2d at 608–09. A court may appropriately dismiss an action with prejudice without giving an opportunity to amend if it finds that the plaintiff alleged his best case or amendment would be futile. *Foman,* 371 U.S. at 182; *DeLoach*, 405 F.2d at 496–97.

## DISCUSSION

UNOS contends this suit against it should be dismissed because Chase fails to allege any plausible cause of action in violation of the False Claims Act and fails to plead any claim with sufficient particularity as required by Federal Rule 9(b). In addition, UNOS contends Chase fails to state a plausible claim for fraud under Federal Rule 8 because Chase fails to plead a fraudulent

scheme with particularity. UNOS contends Chase fails to allege the elements of scienter and materiality, and if so construed, fails to allege these elements with sufficient particularity.

The FCA imposes liability on any entity which knowingly submits or causes to be submitted a false claim for payment of Government funds or knowingly makes or causes to be made a false record or statement material to a false claim. 31 U.S.C. § 3729(a)(1)(A), (B). Thus, the elements of liability under the FCA are: "'(1) there was a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter; (3) that was material; and (4) that caused the government to pay out money or to forfeit moneys due….'" *United States ex rel. Porter v. Magnolia Health Plan, Inc.*, 810 F. App'x 237, 240 (5th Cir. 2020) (quoting *Abbott v. BP Expl. & Prod., Inc.*, 851 F.3d 384, 387 (5th Cir. 2017)). Thus, a "false claim" in the FCA context consists of a demand for money that induces the government to disburse funds or otherwise suffer immediate financial detriment. *U.S. ex rel. Shupe v. Cisco Sys., Inc.*, 759 F.3d 379, 385 (5th Cir. 2014), abrogated by *Wisconsin Bell, Inc. v. United States ex rel. Heath*, 145 S. Ct. 498 (2025). "The FCA may be enforced not just through litigation brought by the Government itself, but also through civil qui tam actions that are filed by private parties, called relators, in the name of the Government." *Kellogg Brown & Root Servs., Inc. v. United States ex rel. Carter*, 575 U.S. 650, 653 (2015)(quotations omitted).

### Legal Standard of Pleading in FCA Cases

A complaint filed under the FCA must meet the heightened pleading standard of Federal Rule 9(b), which requires a relator to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009); *United States ex rel. Integra Med Analytics, L.L.C.*, 816 Fed. App'x. 892, 896 (5th Cir. 2020). "What constitutes 'particularity' will necessarily differ with the facts of each case, 'at a minimum Rule 9(b) requires the who, what, when, where, and how to be laid out.'"

*Grubbs*, 565 F.3d at 185; *Bowles v. Mars, Inc.*, No. 4:14-CV-2258, 2015 WL 3629717, at *3 (S.D. Tex. June 10, 2015) (quoting *Benchmark Electronics, Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir.), *opinion modified on denial of reh'g*, 355 F.3d 356 (5th Cir. 2003)). This standard imposed in FCA cases ensures the complaint "provides defendants with fair notice of the plaintiffs' claims, protects defendants from harm to their reputation and goodwill, reduces the number of strike suits, and prevents plaintiffs from filing baseless claims then attempting to discover unknown wrongs." *Grubbs*, 565 F.3d at 190.

To meet this pleading requirement, a relator's complaint that does not allege "the details of an actually submitted false claim, may nevertheless survive by alleging particular details of a scheme to submit false claims paired with reliable details that present a strong inference those claims were actually submitted, such as dates and descriptions of recorded, but unprovided, services and a description of the billing system that the records were likely entered into. *Grubbs*, 565 F.3d at 190-91. This pleading requirement must be imposed less stringently when the alleged fraud occurred over an extended period and consists of numerous acts. *U.S. ex rel. Ruscher v. Omnicare, Inc.*, No. 4:08-CV-3396, 2014 WL 2618158, at *10 (S.D. Tex. June 12, 2014), *on reconsideration in part*, 2014 WL 4388726 (S.D. Tex. Sept. 5, 2014) (quoting *United States ex rel. Foster v. Bristol–Myers Squibb Co.*, 587 F.Supp.2d 805, 821 (E.D. Tex. 2008)). However, even under this "relaxed" standard, the plaintiff must adhere to the basic rule that the complaint must include a sufficient factual basis to support the relator's belief that a defendant engaged in a fraudulent scheme. *Ruscher*, 2014 WL 2618158, at *11 (quoting *Foster*, 587 F. Supp. 2d at 822); *see also Frey*, 2023 WL 2563239, at *7.

### APPLICATION

Because the Second Amended Complaint does not allege the details of any individual false claim, but alleges fraud that occurred over an extended period and consists of numerous acts, the Court analyzes Chase's allegations under the *Grubbs* standard to determine if Chase sufficiently alleges UNOS knowingly submitted or caused to be submitted a false claim for payment of Government funds or knowingly made or caused to be made a false record or

statement material to a false claim in violation of §§ 3729(a)(1)(A) or (B), paired with reliable details to present a strong inference fraudulent claims were actually submitted for payment. *See Grubbs*, 565 F.3d at 190-91.

### I.    Causes of Action of Violation of the False Claims Act

### (1) Liability Theory of Double Charging

In the Second Amended Complaint, Chase alleges:

> UNOS double-charges transplant centers a fee in addition to the OPTN fee for listing donors, even though the UNOS fee does not entitle transplant centers to any additional services beyond those already provided by the OPTN…. UNOS claims the fee is a monthly charge based on additional work to include analysis and data related services provided to all transplant community members that the Organization bills to those same member organizations that received an OPTN fee and is solely a UNOS based fee. However, UNOS, through the OPTN, is already required to provide analysis and data to all transplant community members. Further, UNOS does not have any data because all data is for the OPTN as provided by UNOS's contract with HHS. Instead, UNOS is fraudulently billing transplant centers, who in turn bill Federal Healthcare, for work UNOS is already being paid for in its role as OPTN Contractor.

*ECF No. 37, pars. 245-249*. Because Chase contends these fees are for the same conduct and are passed on to Federal Healthcare by the transplant centers, UNOS engages in a fraudulent scheme in violation of the FCA. *Id*.

### a.    Particular Details of the Alleged Scheme

The Court will analyze UNOS's arguments that pertain to elements one and four of Chase's FCA cause of action, that is whether Chase sufficiently plead: (1) UNOS made a false statement or engaged in a fraudulent course of conduct, and (4) that caused the government to pay out money.

Clearly, the alleged scheme of "double charging" does not involve any instance in which UNOS submitted a false claim for payment by the government. However, this alleged scheme could still support a cause of action under the FCA if Chase can sufficiently identify particular

details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted. *Grubbs*, 565 F.3d at 190. Dismissal is appropriate if Chase offers only conclusory allegations, or if Chase cannot offer factual information with sufficient indicia of reliability or cannot demonstrate a strong inference that UNOS caused fraudulent claims to be submitted for payment by Federal Healthcare. *Nunnally v. W. Calcasieu Cameron Hosp.*, 519 F. App'x 890, 895 (5th Cir. 2013). Even though Chase need not identify the details of specific false claims, he still must sufficiently plead and identify details of the alleged fraudulent scheme to satisfy Federal Rule 9(b). *Id*.

Chase's allegations particular to this double-charging scheme fail to provide sufficient particularity even under a relaxed standard. First, Chase relies solely upon his personal conclusion and opinion that UNOS's billing procedure was contrary to that allowed under any statute or under UNOS's contract with HHS. Chase provides no specific reference to the contract or any statute that precluded any of UNOS's charges, nor does Chase provide any basis, other than his own conclusory allegations, for the Court or UNOS to determine whether or how the alleged double charges amounted to fraud. Chase does not describe with particularity how UNOS designed or executed the alleged double-charging scheme or any individual at UNOS who orchestrated or participated in the alleged scheme. Other than his conclusory statement, Chase does not provide support or any indication that any of UNOS's alleged double charges for the same service were actually submitted to and recovered from Federal Healthcare by the unidentified transplant centers. Chase does not provide any indication of UNOS communications, meetings, or internal directives that would support the existence of a coordinated fraudulent plan or of intention or knowledge Federal Healthcare would reimburse such fraudulent double charges. Therefore, the cited excerpts in addition to the general factual summary from the Second Amended Complaint are solely conclusory and unsupported and cannot support a cause of action for the alleged violations of the FCA committed by UNOS.

In addition, Chase concedes UNOS disclosed both fees on invoices to the unidentified transplant centers. *ECF No. 37, pars. 246– 47*. Consequently, UNOS's unidentified invoices and

generalized billing practice referenced in the Second Amended Complaint disclosed both the OPTN and UNOS fees, Chase does not allege Federal Healthcare was misled by this double-billing scheme, nor does Chase provide support to substantiate his claim this billing scheme was fraudulent or resulted in fraudulent claims to be submitted to Federal Healthcare. Chase concedes UNOS's invoices to the unidentified transplant centers were not fraudulent, in themselves, but alleges they were simply improper and outside of the HHS contract terms. Therefore, Chase fails to plausibly allege the UNOS fee submitted in these unidentified invoices, as a general practice, resulted in any transplant center's submission of a false or fraudulent claim for reimbursement to Federal Healthcare.

These pleading deficiencies provide independent bases for the Court to dismiss this liability theory against UNOS without further analysis. Although Chase does not provide sufficient factual details of a fraudulent scheme to support a cause of action based upon the alleged double-billing scheme or to assert a plausible claim, the Court will analyze the second prong of the test to determine sufficiency of pleading.

> **b.** **Reliable Indicia that Lead to a Strong Inference UNOS Engaged in Improper Billing Practice**

In *Grubbs*, the Fifth Circuit found the relator provided reliable indicia to support his allegations by stating "the particular workings of a scheme [that were] communicated directly to the relator by those perpetrating the fraud," and the relator "describe[d] in detail, including the date, place, and participants, the dinner meeting at which two doctors ... attempted to bring him into the fold of their on-going fraudulent plot." *Grubbs*, 565 F.3d at 191-92. The *Grubbs* relator also corroborated this allegation with descriptions of a meeting with nurses who tried to help him carry out the scheme, along with specific dates on which "each doctor falsely claimed to have provided services to patients." *Id.* at 192.

In contrast, Chase simply asserts personal knowledge of the alleged improper double charges gained through his current and former roles at transplant centers. *ECF No. 86, at 13*.

Based solely upon this general work experience at transplant centers Chase fails to plausibly allege how he has knowledge of UNOS's billing practice or how UNOS carries out the alleged fraudulent double charges. Chase does not show personal knowledge or any reliable indicia of how he might have knowledge of the particular details of any alleged fraudulent billing scheme which would cause Federal Healthcare to pay claims it should not. *See Grubbs*, 565 F.3d at 190. Chase describes the alleged improper billing practice; however, he does not allege anyone within UNOS communicated to him the workings of any fraud of billing Federal Healthcare for these charges or that he viewed any other indicia, like internal documents, evidencing such fraud or evidencing UNOS's intention to improperly double bill for the same services knowing any improper charges would be recovered from Federal Healthcare. *See Grubbs*, 565 F.3d at 191; *United States v. Cath. Health Initiatives*, No. 4:18-CV-123, 2022 WL 2657131, at *10 (S.D. Tex. Mar. 31, 2022), *report and recommendation adopted*, 2022 WL 2652135 (S.D. Tex. July 8, 2022).

Because Chase cannot establish any personal knowledge or provide any reliable indicia that could lead to a strong inference that UNOS engaged in improper double billing and these charges were actually submitted to Federal Healthcare, Chase cannot plausibly allege the essential elements of violation of the FCA. For this reason, even if Chase had pleaded particular details of the alleged scheme, Chase does not provide the "reliable indicia" needed to satisfy the requirements of Rule 9(b). *See United States ex rel. Hendrickson*, 343 F. Supp. 3d at 635.

With these pleading deficiencies, the Court finds Chase fails to satisfy the pleading requirements of Federal Rule 9(b) to assert a violation of the FCA against UNOS based upon an alleged scheme of double charging unidentified transplant centers for its services. With this deficiency, Chase fails to allege sufficient detail of elements (1) and (4) of the cause of action of violation of the FCA based upon this theory of liability. For this reason, the Court will not analyze whether Chase satisfies the pleading requirement of the scienter and materiality elements.

For these reasons, this theory of liability for violation of the FCA will be dismissed.

### (2) Liability Theory of Failure to Adequately Oversee OPOs

Chase alleges UNOS failed to oversee OPOs and organ donation in the way required by the law and its contract with the United States, and instead, conspired with the OPOs to hide issues from HHS and "avoid accountability for the widespread fraud in organ donation." *ECF 37, pars. 250-305*. Chase calls this conspiracy a "catch and kill." Under this "catch and kill" scheme, Chase alleges UNOS receives complaints of improper actions or failures by hospital staff on behalf of the OPTN but does not properly vet the complaints. Chase alleges "UNOS will not refer a complaint if the issues are outside of what UNOS views as OPTN authority or do not violate a policy." As support, Chase alleges "UNOS received 1,118 complaints against all 57 OPOs between 2010 and 2020. UNOS referred less than half of the complaints." When UNOS does refer a case, it does so in a way to limit the action that can be taken against the OPO, stating, "[o]f the 444 cases referred, … only one case resulted in probation. Three resulted in a peer visit, 63 resulted in a letter of warning, were uncontested or resulted in a letter of noncompliance, and 68 were closed without any action….[, and] only probation cases are publicly disclosed."

Based on these statistics, Chase alleges "by not providing referrals and downplaying the problems, UNOS is able to hide the problems in the organ transplant system. Further, UNOS does not follow up with the person who submitted the complaint." Chase then provides several "representative examples of UNOS failing to perform its oversight function." *ECF No. 37, pars. 264-305*. These representative examples include screenshots of nonspecific and unidentified communications or what Chase characterizes as "complaints" pertaining to the organizations of LifeGift, Donor Network West, Life Connection of Ohio, Nevada Donor Network, Mississippi Organ Recovery Agency, Jackson Memorial Hospital Transplant Center, Indiana Donor Network, and Life Alliance Recovery Organization. *Id*. Chase includes in some of these examples his conclusory disagreement with the action, or inaction, taken by UNOS.

Chase's allegations regarding UNOS's improper oversight of OPOs and transplant centers are generalized and lack the requisite particularity. Nothing in Chase's allegations pertain

13

to any submission of a false or fraudulent claim to Federal Healthcare by either UNOS or any unidentified transplant center. These allegations amount only to Chase's disagreement with and disapproval of UNOS's performance under its contract. In general, the FCA is not a vehicle for enforcing regulatory compliance or resolving contract disputes absent a knowing and material misrepresentation of a claim that is actually presented to the government for payment. *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 194 (2016). Consequently, these conclusory allegations cannot state a plausible claim or support a cause of action under the FCA § 3729(a)(1)(A), (B) for knowingly submitting or causing to be submitted a false claim for payment of Government funds or knowingly making or causing to be made a false record or statement material to a false claim. *See id*.

While an entity's failure to perform under a contract may support a FCA cause of action, such failure must amount to a fraudulent scheme to deceive or a knowing submission of a deceptive claim for payment. *Escobar*, 579 U.S. at 189-194. Chase's allegations do not pertain to any knowing or material misrepresentation UNOS made but instead amount only to Chase's perception of UNOS's failure to perform under its contract. Chase fails to identify how any of these alleged contractual failures led to any specific false claim for payment by the government.

In addition, Chase fails to assert anything that would support a finding of reliable indicia that would lead to a strong inference UNOS intentionally misrepresented a claim for payment. Chase's assertion that he "directly experienced" UNOS's alleged failure to oversee OPOs does not cure these deficiencies. *See ECF No. 37, pars. 251–54*. Even if Chase personally reported concerns to UNOS and disagreed with the adequacy of UNOS's response, at most, such allegations amount to a dispute over regulatory or contractual compliance—not intentional fraud or the knowing submission of a false claim for payment.

Going further, specific to claims such as the one Chase asserts here, "[a] misrepresentation about compliance with a statutory, regulatory, or contractual requirement must be material to the Government's payment decision in order to be actionable under the FCA." *Escobar*, 579 U.S. at 192; *United States v. Corp. Mgmt., Inc.*, 78 F.4th 727, 737 (5th Cir. 2023).

The FCA defines the "material" element of this cause of action as "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4). The materiality element turns on whether the government would pay a submitted claim, or not, if the government knew of the claimant's violation. *Escobar*, 579 U.S. at 194; *United States v. Corp. Mgmt., Inc.*, 78 F.4th at 737. To illustrate, the allegations in *Escobar* were that a mental health facility in Massachusetts was billing Medicaid for services provided by unlicensed, unqualified staff in systematic violation of state regulations and that the government would have ceased reimbursement if it knew the truth. *Id*.

By contrast, as discussed, Chase's allegations do not amount to or result in submission of a fraudulent claim to Federal Healthcare. Because Chase's allegations amount only to his opinion and conclusory allegation that UNOS's billing practice was contrary to the terms of UNOS's contract with HHS, he pleads nothing that would indicate Federal Healthcare would not reimburse the unidentified transplant centers' presumed submission of UNOS's fees for reimbursement. Nothing in the Second Amended Complaint suggests Federal Healthcare is not aware of its reimbursement payments of the nature of these fees or that the transplant centers supposed submission somehow deceives Federal Healthcare and causes improper payment. Thus, based upon these allegations, Chase cannot satisfy the materiality element of this theory of liability for violation of the FCA. Therefore, Chase cannot state a plausible claim for violation of the FCA based upon UNOS's alleged contract violations. *See United States v. Catholic Health Initiatives*, 312 F.Supp.3d at 605.

Chase responds to the cited pleading deficiencies by arguing

the SAC details how UNOS is paid as well as how oversight is required under UNOS's contract. SAC at ¶¶ 48-52, 233-34. Further, as UNOS admits, the SAC describes how UNOS engages in a catch and kill operation to hide problems in the organ donation industry. Def.'s Mot. to Dismiss at 15. UNOS is given the chance to spike investigations before they start, with only 444 out of 1,118 complaints it received for OPOs between 2010 and 2020 being referred to the MPSC, because UNOS decides to not refer numerous cases to the MPSC. SAC at ¶¶ 256, 258. Instead of fixing problems, UNOS allows its members to retaliate and silence whistleblowers, as it did to Chase. SAC at ¶¶ 21, 171, 321-327. Further, UNOS

stacks the MPSC with OPO executives, limits the MPSC's responsibility to exclude redressing systematic problems, and regularly ignores serious issues that come before the MPSC, all to protect rather than oversee OPTN members. SAC at ¶¶ 257, 263-277. UNOS admits that the MPSC is ineffective but that it deliberately ignores the MPSC's failings. SAC at ¶ 273.

Chase's references to the Second Amended Complaint do not cure the fundamental deficiency of this theory of liability in that Chase's disapproval of UNOS's performance under the unidentified contract is not actionable, nor may the FCA be used as a vehicle to enforce the unidentified contract. Consequently, this theory of liability is simply not plausible, and therefore, Chase cannot adequately plead a plausible cause of action.

With these pleading deficiencies, the Court finds Chase fails to satisfy the pleading requirements of Federal Rule 9(b) to assert a violation of the FCA against UNOS based upon an alleged scheme of failure to adequately oversee the OPOs.

For these reasons, this theory of liability for violation of the FCA will be dismissed.

## II.    Causes of Action of Violation of State Law

In the Second Amended Complaint, Chase asserts state law causes of action that mirror the alleged violations of the federal FCA.

These state law theories of liability fail for the same reasons Chase's theories of liability for violation of the federal FCA fail, in that the allegations of state-law violations do not identify or specify any claims for payment that UNOS made, directly or indirectly, to any specific state, or any payments made by any state to UNOS. Chase makes only generalized allegations that the Defendants cause false and fraudulent claims for payment, and each state paid claims and incurred losses. These general and nonspecific allegations are insufficient.

Further, because this Court will dismiss all of Chase's theories of liability under the FCA, it will exercise its discretion to refrain from exercising any supplemental jurisdiction over any state cause of action. *See Heggemeier v. Caldwell Cnty., Tex.*, 826 F.3d 861, 872 (5th Cir. 2016)

(per curiam); *Brookshire Bros. Holding, Inc. v. Dayco Prods., Inc.*, 554 F.3d 595, 602 (5th Cir. 2009).

For these reasons, any cause of action based upon a violation of state law against UNOS will be dismissed.

**AMENDMENT OF SECOND AMENDED COMPLAINT**

Prior to dismissal of a Complaint, a court must "freely give leave [to amend the pleadings] when justice so requires." Fed. R. Civ. P. 15(a)(2). However, leave to amend is within the sound discretion of the court and can be appropriately denied when "it is clear that the defects [of a complaint] are incurable." *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).

This Court provided Chase a final opportunity to cure all pleading defects prior to submission of this Motion to Dismiss. In response to the Court's admonition that Chase had one, final opportunity to amend the Complaint, he submitted the live Second Amended Complaint. Based upon this procedural posture and the Court's admonition, the Court finds Chase was provided ample opportunity to satisfy Federal Rule 15.

**CONCLUSION**

For the reasons stated, UNOS's Motion to Dismiss for Failure to State a Claim pursuant to Federal Rule 12(b)(6) is **GRANTED**.

It is so ORDERED.
SIGNED this 13th day of January, 2026.



JASON  PULLIAM
UNITED STATES DISTRICT JUDGE