UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

UNITED STATES, EX REL; AND
STATE OF TEXAS,

   *Plaintiffs*,

PATREK CHASE,

*Relator*,

v.

                          Case No.  SA-23-CV-00381-JKP

PARKLAND HEALTH AND HOSPI-
TAL SYSTEM, TRINITY HEALTH'S
LOYOLA UNIVERSITY MEDICAL
CENTER, SOUTHWEST TRANS-
PLANT ALLIANCE, LIVEONNY,
NEW JERSEY SHARING NETWORK,
UNITED NETWORK FOR ORGAN
SHARING,

   *Defendants*.

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant LiveOnNY's Motion to Dismiss for Failure to State a Claim. *ECF Nos. 78,98*. Plaintiff/Relator Patrek Chase responded. *ECF No. 93*. Upon consideration, the Motion to Dismiss is **GRANTED**.

## FACTUAL BACKGROUND

On March 28, 2023, Relator Patrek Chase filed this qui tam action alleging violation of the False Claims Act (FCA) in the name of the United States and many individual states. *ECF No. 1*. In the Second Amended Complaint, Chase names as Defendants entities in the organ do-nation and transplant system which includes transplant centers, Organ Procurement Organiza-

tions (OPOs), and the United Network for Organ Sharing (UNOS).[1] *ECF No. 37*. In general terms, Chase alleges these named Defendants fraudulently billed Medicare and Medicaid (Federal Healthcare) and accepted illegal kickbacks in the process of procuring kidneys for transplant to patients in need. *Id. at pars. 5, 58-74*.

In this kidney-procurement system, OPOs hold exclusive territorial rights over specific geographic regions to recover organs in that area. *Id. at pars. 53-55*. As a condition to participation in Federal Healthcare, every hospital must contact the OPO in the region in which it sits to obtain potential organs for a patient in need. *Id. at par. 55*; 42 U.S.C. §§ 1320b-8(a)(1)(B), (C). Federal Healthcare reimburses each OPO for kidneys procured and intended for transplant, even if the kidney is later determined unusable; however, Federal Healthcare will not compensate an OPO for a kidney the OPO knows is not viable at the time of procurement. 42 C.F.R. § 413.402(a). Because much of an OPO's costs are covered by Federal Healthcare, OPOs submit to Federal Healthcare a cost report which contains a certification attesting the expenses are allowed and accurate. *Id. at pars. 58-74*. Further, OPOs can charge a standard acquisition cost fee for organs to the organ recipient's Medicaid healthcare. *Id*. Therefore, the OPOs' costs are also passed on to Medicaid patients through the standard acquisition cost fee. *Id. at par. 67*. However, OPOs can only charge costs that are reasonable and related to patient care. 42 C.F.R. § 413.402(d); *see also* 42 C.F.R. § 413(b). In general terms, Chase alleges these named entities procured known, non-viable kidneys and subsequently fraudulently billed Federal Healthcare for the procurement. *Id. at pars. 58-74*. Chase alleges the OPOs submitted non-allowed costs on their cost report that were not reasonable nor related to patient care. *Id*.

---

[1] Chase named numerous entities and persons in the original Complaint. However, the only remaining Defendants are: LiveOnNY, New Jersey Sharing Network, Parkland Health and Hospital System, Southwest Transplant Alliance, Trinity Health's Loyola University Medical Center, and United Network for Organ Sharing.

Although Chase filed this qui tam action on March 28, 2023, on June 20, 2025, the United States declined to intervene in this action. *ECF No. 25*. On June 25, 2025, the State of Texas and all other Plaintiff states declined to intervene in this action. *ECF No. 27*. This Court unsealed this action. On August 1, 2025, this Court permitted Chase to file the live Second Amended Complaint; due to the age of the case at that time, this Court cautioned Chase no further amendments would be allowed. *ECF Nos. 33,37*.

Particular to this Motion, LiveOnNY is an OPO responsible for coordinating the recovery of organs and tissues for transplant for Long Island, New York City, and southern New York. In the Second Amended Complaint, Chase asserts FCA violations relating to LiveOnNY and other OPOs that occurred in different geographic areas. Parsing the allegations and construing the Complaint liberally, Chase contends LiveOnNY committed the following violations: (1) non-viable kidney procurement; (2) submission of excessive costs; (3) false inflation of statistics and failure to attempt to recover every possible organ; (4) mismanagement and improper prioritization; (5) receipt of improper kickbacks; (6) improper reverse False Claims Act violation; and (7) mirror causes of action under various state laws. LiveOnNY now files this Motion to Dismiss for Failure to State a Claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

### LEGAL STANDARD

To provide opposing parties fair notice of the asserted cause of action and the grounds upon which it rests, every pleading must contain a short and plain statement of the cause of action which shows the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To satisfy this requirement, the Complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555-558, 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the

3

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The focus is not on whether the plaintiff will ultimately prevail, but whether that party should be permitted to present evidence to support adequately asserted causes of action. *Id.*; *Twombly*, 550 U.S. at 563 n.8. Thus, to warrant dismissal under Federal Rule 12(b)(6), a Complaint must, on its face, show a bar to relief or demonstrate "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Fed. R. Civ. P. 12(b)(6); *Clark v. Amoco Prod. Co.,* 794 F.2d 967, 970 (5th Cir. 1986). Dismissal "can be based either on a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Frith v. Guardian Life Ins. Co.,* 9 F.Supp.2d 734, 737–38 (S.D.Tex. 1998). "Thus, the court should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint." *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999); *Vander Zee v. Reno,* 73 F.3d 1365, 1368 (5th Cir. 1996).

In assessing a Motion to Dismiss under Federal Rule 12(b)(6), the Court's review is limited to the Complaint and any documents attached to the Motion to Dismiss, which are also referred to in the Complaint and central to the plaintiff's claims. *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014). When reviewing the Complaint, the "court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)(quoting *Jones*, 188 F.3d at 324).

A complaint should only be dismissed under Federal Rule 12(b)(6) after affording every opportunity for the plaintiff to state a claim upon which relief can be granted, unless it is clear amendment would be futile. *Foman v. Davis,* 371 U.S. 178, 182 (1962); *Hitt v. City of Pasade-*

*na,* 561 F.2d 606, 608–09 (5th Cir. 1977); *DeLoach v. Woodley,* 405 F.2d 496, 496-97 (5th Cir. 1968). Consequently, when it appears a more careful or detailed drafting might overcome the deficiencies on which dismissal is sought, a Court must allow a plaintiff the opportunity to amend the Complaint. *Hitt,* 561 F.2d at 608–09. A court may appropriately dismiss an action with prejudice without giving an opportunity to amend if it finds that the plaintiff alleged his best case or amendment would be futile. *Foman,* 371 U.S. at 182; *DeLoach*, 405 F.2d at 496–97.

## DISCUSSION

LiveOnNY contends this suit against it should be dismissed because Chase fails to allege any plausible claim under the False Claims Act and fails to plead any claim with sufficient particularity as required by Federal Rule 9(b). LiveOnNY contends Chase fails to allege the elements of scienter and materiality, and if so construed, fails to allege these elements with sufficient particularity.

The FCA imposes liability on any person who knowingly submits or causes to be submitted a false claim for payment of Government funds, knowingly makes or causes to be made a false record or statement material to a false claim or conspires to commit any such violation. 31 U.S.C. § 3729(a)(1)(A)–(C). The FCA also imposes liability on any person who knowingly makes or causes to be made a false record or statement material to an obligation to transmit money to the Government or knowingly conceals an obligation to transmit money to the Government (reverse FCA cause of action). *Id.* § 3729(a)(1)(G). Thus, the elements of liability under the FCA are: "'(1) there was a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter; (3) that was material; and (4) that caused the government to pay out money or to forfeit moneys due….'" *United States ex rel. Porter v. Magnolia Health Plan, Inc.*, 810 F.App'x 237, 240 (5th Cir. 2020) (quoting *Abbott v. BP Expl. & Prod., Inc.*, 851 F.3d 384, 387 (5th Cir. 2017)). Thus, a "false claim" in the FCA context consists of a demand for money that induces the government to disburse funds or otherwise suffer immediate financial detriment. *U.S. ex rel. Shupe v. Cisco Sys., Inc.*, 759 F.3d 379, 385 (5th Cir. 2014), abrogated by

*Wisconsin Bell, Inc. v. United States ex rel. Heath*, 145 S. Ct. 498 (2025). "'In a reverse false claims suit, the defendant's action does not result in improper payment by the government to the defendant but instead results in no payment to the government when a payment is obligated.'" *United States ex rel. Hendrickson v. Bank of Am., N.A.*, 343 F. Supp. 3d 610, 618 (N.D. Tex. 2018), *aff'd*, 779 Fed. App'x 250 (5th Cir. 2019) (quoting *United States ex rel. Bain v. Ga. Gulf Corp.*, 386 F.3d 648, 653 (5th Cir. 2004)). Therefore, a reverse false claim is where any person "us[ing], or caus[ing] to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government." 31 U.S.C. § 3729(a)(1)(G); *see United States ex rel. Frey v. Health Mgmt. Sys., Inc.*, No. 4:21-CV-2024, 2023 WL 2563239, at *4 (S.D. Tex. Feb. 10, 2023), report and recommendation adopted, 2023 WL 2564342 (S.D. Tex. Mar. 17, 2023). "The FCA may be enforced not just through litigation brought by the Government itself, but also through civil qui tam actions that are filed by private parties, called relators, in the name of the Government." *Kellogg Brown & Root Servs., Inc. v. United States ex rel. Carter*, 575 U.S. 650, 653 (2015)(quotations omitted).

### Legal Standard of Pleading in FCA Cases

A complaint filed under the FCA must meet the heightened pleading standard of Federal Rule 9(b), which requires a relator to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009); *United States ex rel. Integra Med Analytics, L.L.C.*, 816 Fed. App'x. 892, 896 (5th Cir. 2020). "What constitutes 'particularity' will necessarily differ with the facts of each case, 'at a minimum 'Rule 9(b) requires the who, what, when, where, and how to be laid out.'" *Grubbs*, 565 F.3d at 185; *Bowles v. Mars, Inc.*, No. 4:14-CV-2258, 2015 WL 3629717, at *3 (S.D. Tex. June 10, 2015) (quoting *Benchmark Electronics, Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir.), *opinion modified on denial of reh'g*, 355 F.3d 356 (5th Cir. 2003)). This standard imposed in FCA cases ensures the complaint "provides defendants with fair notice of the plaintiffs' claims, protects defendants from harm to their reputation and goodwill, reduces the

6

number of strike suits, and prevents plaintiffs from filing baseless claims then attempting to discover unknown wrongs." *Grubbs*, 565 F.3d at 190.

To meet this pleading requirement, a relator's complaint that does not allege "the details of an actually submitted false claim, may nevertheless survive by alleging particular details of a scheme to submit false claims paired with reliable details that present a strong inference those claims were actually submitted, such as dates and descriptions of recorded, but unprovided, services and a description of the billing system that the records were likely entered into. *Grubbs*, 565 F.3d at 190-91. This pleading requirement must be imposed less stringently when the alleged fraud occurred over an extended period and consists of numerous acts. *U.S. ex rel. Ruscher v. Omnicare, Inc.*, No. 4:08-CV-3396, 2014 WL 2618158, at *10 (S.D. Tex. June 12, 2014), *on reconsideration in part*, 2014 WL 4388726 (S.D. Tex. Sept. 5, 2014) (quoting *United States ex rel. Foster v. Bristol–Myers Squibb Co.*, 587 F.Supp.2d 805, 821 (E.D. Tex. 2008)). However, even under this "relaxed" standard, the plaintiff must adhere to the basic rule that the complaint must include a sufficient factual basis to support the relator's belief that a defendant engaged in a fraudulent scheme. *Ruscher*, 2014 WL 2618158, at *11 (quoting *Foster*, 587 F. Supp. 2d at 822); *see also Frey*, 2023 WL 2563239, at *7.

## Application

Because the Second Amended Complaint does not allege the details of any individual false claim, but alleges fraud that occurred over an extended period of time and consists of numerous acts, the Court analyzes Chase's allegations under the *Grubbs* standard to determine if Chase sufficiently alleges a scheme to submit false claims, paired with reliable details, to present a strong inference those claims were actually submitted. This alleged scheme must include details such as dates and descriptions of each of the six specified theories and/or a description of the billing system that records of these improper charges were likely entered into. *See Grubbs*, 565 F.3d at 190-91.

7

## I. Causes of Action of Violation of the False Claims Act (Claims I and II)

### (1) Allegations against OPOs

In the Second Amended Complaint, Chase presents numerous allegations against "the three OPO defendants." *See ECF No. 37, pars. 4(b),10-13,158,164-170, 180-183,193-194,198-202, 205,207-208, 212-13*.

The pleading requirements of Federal Rule 9(b) must be satisfied as to each named Defendant. Therefore, a pleading that contains allegations of a scheme pertinent to a group of Defendants or that alleges general conduct performed by a group of defendants does not satisfy the heightened pleading requirements of Federal Rule 9(b). *In re Parkcentral Glob. Litig.*, 884 F.Supp.2d 464, 470-71 (N.D. Tex. 2012). Attributing discrete actions to all defendants without explaining the basis for the grouping or distinguishing between the relevant conduct of each defendant is insufficient to meet the pleading requirement of Federal Rule 9(b) for allegations of violation of the FCA. *U.S. v. Lakeway Reg'l Med. Ctr.*, Case No. A-19-CV-00945, 2020 WL 6146571, at *2 (W.D. Tex. Feb. 13, 2020). Rather, the complaint must segregate the alleged wrongdoing of each of the named defendants. Allegations of scienter may be averred generally, but simple allegations of fraudulent intent will not suffice. *In re Parkcentral Glob. Litig.*, 884 F. Supp.2d at 471.

Because the cited allegations are generalized allegations of a scheme pertinent to "the OPO Defendants" group, and these excerpts allege general conduct performed by this group of defendants without explanation of the basis for the grouping or differentiation between the relevant conduct of each defendant in this group, these allegations do not satisfy the heightened pleading requirements of Federal Rule 9(b). *See ECF No. 37, pars. 4(b),10-13,158,164-170, 180-183,193-194,198-202, 205,207-208, 212-13*. Consequently, these allegations, individually and collectively, cannot serve as basis for a violation of the FCA. *See In re Parkcentral Glob. Litig.*, 884 F.Supp.2d at 470-71; *U.S. v. Lakeway Reg'l Med. Ctr.*, 2020 WL 6146571, at *2.

The Court will not consider these listed allegations in analysis of LiveOnNY's Motion to Dismiss.

### (2)    Liability Theory of Procurement of Non-viable Kidneys

In the Second Amended Complaint, specific to LiveOnNY, Chase alleges:

(a) "The director of Quality Control was told by the CEO of LiveOnNY to 'fudge their data' in order to cover up the number of non-viable kidneys LiveOnNY recovered." *ECF No. 37, par. 177*;

(b) Further, both LiveOnNY and NJ Sharing Network prioritized "consents" from potential donors, rather than viable kidneys. Meaning that at both LiveOnNY and NJ Sharing Network gave an increased rating if a non-viable kidney was procured and a decreased rating if a consent was not achieved for a non-viable kidney. Both LiveOnNY and NJ Sharing Network knew these policies would lead to an increased procurement in non-viable kidneys. *Id. at par. 178;*

(c) The rates of kidney discard for all of the OPO Defendants exceed those for all other organs. For example, in 2024:
c. LiveOnNY recovered a total of 1,074 kidneys for transplant. A total of 344 kidneys, or 32% were discarded because they were not viable. By contrast, only two hearts out of a total of 110 hearts were discarded. *Id. at par. 180.*

These excerpted allegations specific to LiveOnNY fail to provide sufficient particularity even under a relaxed standard because Chase fails to identify a person involved in the alleged fraudulent procurement scheme (the "who"). The allegations (a) – (c) lack necessary details regarding the "what" and "how" of the alleged schemes, and instead, assert generalized, conclusory allegations. *U.S. ex rel. Nunnally v. W. Calcasieu Cameron Hosp.*, 519 F. App'x 890, 895 (5th Cir. 2013). Chase does not provide any "representative examples of specific fraudulent acts conducted pursuant to" the schemes alleged. *U.S. ex rel. Bennett v. Medtronic, Inc.*, 747 F. Supp. 2d 745, 768 (S.D. Tex. 2010) (quoting *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 509–10 (6th Cir. 2007)). For each of the actions or schemes alleged in these excerpts (a) - (c), the information Chase provides is limited to a conclusory description of the alleged scheme yet provide no details regarding how the alleged scheme was in fact carried out or specific examples of when it was carried out. *see also United States ex rel. King v. Alcon Labs., Inc.*, 232 F.R.D. 568, 572 (N.D. Tex. 2005). Finally, while taken as true and construed liberally, these

excerpts may allege egregious and potential fraudulent acts, Chase falls short in alleging specifically that LiveOnNY did, in fact, bill any known, non-viable procured kidneys for reimbursement from Federal Healthcare, nor does Chase describe how such fraudulent billing occurred.

While Chase did provide an example in excerpt (a) of potentially fraudulent behavior of "fudging data," taken as true, this example does not provide sufficient detail of a scheme of fraudulent billing for procurement of a non-viable kidney, nor does it provide sufficient detail of the people involved. Excerpt (a) describes only an example of egregious behavior; however, this nonspecific employee's directive does not sufficiently describe a scheme of fraudulent billing for procurement of a non-viable kidney. For these reasons, excerpt (a) cannot serve as basis for a violation of the FCA.

Finally, in excerpt (c), Chase provides some statistical basis for the alleged scheme: the number of kidneys donated for transplant compared to the number of kidneys that were ultimately viable, leaving a 32% viable-kidney ratio. Chase compares this to the ratio of viable hearts procured for transplant. This statement is unsupported and falls short of identifying individuals involved or even describing and providing an example of the alleged fraudulent scheme. This statement is simply an unsupported and conclusory comparison to the recovery ratio of viable hearts for transplant, which does not provide support for any fraudulent scheme. Therefore, excerpt (c) cannot serve as basis for a violation of the FCA.

Collectively, excerpts (a) – (c) could be liberally construed to describe non-specific conduct of improper procurement of non-viable kidneys. However, taking these allegations as true, this described improper conduct does not provide any example of billing Federal Healthcare for any known non-viable procured kidney, which is the act that would constitute fraud. Therefore, excerpts (a), (b), and (c), individually and collectively, fall short of describing a fraudulent scheme.

Although Chase does not provide sufficient factual details of a fraudulent scheme, the Court will analyze the second prong of the test to determine sufficiency of pleading.

**b.    Reliable Indicia that Lead to a Strong Inference LiveOnNY Improperly Billed for Non-viable Kidneys**

For the second prong of the pleading requirements, Chase must allege reliable indicia that lead to a strong inference LiveOnNY improperly procured known, non-viable kidneys and billed Medicaid for the procurement. *See Grubbs*, 565 F.3d at 190.

In *Grubbs*, the Fifth Circuit found the relator provided reliable indicia to support his allegations by stating "the particular workings of a scheme [that were] communicated directly to the relator by those perpetrating the fraud," and the relator "describe[d] in detail, including the date, place, and participants, the dinner meeting at which two doctors ... attempted to bring him into the fold of their on-going fraudulent plot." *Grubbs*, 565 F.3d at 191-92. The *Grubbs* relator also corroborated this allegation with descriptions of a meeting with nurses who tried to help him carry out the scheme, along with specific dates on which "each doctor falsely claimed to have provided services to patients." *Id.* at 192.

In contrast, Chase simply asserts he gained knowledge or became aware of LiveOnNY's improper conduct of procurement of known, non-viable kidneys through his work "in organ donation for roughly 15 years. He began his career in organ transplantation when he was hired to do hospital development for the Donor Network of Arizona, an OPO located in the State of Arizona. He went on to work for the OPOs in New York and New Jersey: LiveOnNY, formerly New York Organ Donor Network, and NJ Sharing Network." *ECF No. 37, par. 19*. This vague statement of employment and omission of provide specific dates and ways in which he acquired knowledge of any particular fraudulent scheme fails to provide basis for a reasonable inference that Chase had access to any inside information as an original source. *See id.*; *see Grubbs*, 565 F.3d at 191-92. For this reason, even if Chase had pleaded particular details of the alleged scheme, Chase does not provide the "reliable indicia" needed to satisfy the requirements of Rule 9(b). *See id.*; *see also United States ex rel. Hendrickson*, 343 F.Supp.3d at 635.

With these pleading deficiencies, the Court finds Chase fails to satisfy the pleading requirements of Federal Rule 9(b) to assert a violation of the FCA against LiveOnNY based upon an alleged scheme of procuring known non-viable kidneys and billing Federal Healthcare for this procurement. With this deficiency, Chase fails to allege sufficient detail of elements (1) and (4) of the cause of action of violation of the FCA based upon this theory of liability. For this reason, the Court will not analyze whether Chase satisfies the pleading requirement of elements (2), scienter, and (3), materiality, based upon the theory of an alleged scheme of improper procurement of kidneys and fraudulent billing for these kidneys.

For these reasons, this theory of liability for violation of the FCA will be dismissed.

**(2) Liability Theory of Submitting Excessive Cost Reports**

Chase also asserts FCA violation based upon the theory that LiveOnNY submitted false and excessive cost reports for reimbursement as "pertaining to patient care." Again, the Court will begin by analyzing whether Chase sufficiently plead elements (1) and (4) of this theory of violation: (1) LiveOnNY made a false statement or engaged in a fraudulent course of conduct, and (4) that caused the government to pay out money.

In the Second Amended Complaint, pertinent to this alleged theory of liability, Chase alleges:

a) OPOs neither properly allocate charges to Medicare nor limit their charges to only those that are reasonable and necessary. For example, LiveOnNY has an office space with similar designs to a high-end law firm with expensive New York real estate. However, the costs for this design and real estate are primarily billed to CMS. *ECF No. 37, pars. 183-184*;

b) As another example, in the 2010-2013 timeframe, LiveOnNY's CEO bragged that while they were at risk of decertification from CMS, they were going to fight CMS and would be suing CMS with CMS's own money. When LiveOnNY did beat decertification, the CEO received a $250,000 bonus. *Id. at par. 185*;

c) LiveOnNY and NJ Sharing Network also regularly paid lobbyists. Upon information and belief, those lobbying costs were improperly included on the cost reports and reimbursed by CMS. Lobbying costs fall plainly outside those costs which can be properly reimbursed through CMS, built its own office building, and had state of the art offices on site. *Id. at par. 192*;

d) Further, the OPOs provide excessive salaries and bonuses, particularly to their executives. At the end of the year, before each OPO submits its cost report, the staff reviews its costs to ensure that the costs have increased from the year before. If they are not, the

12

OPO will incur unnecessary charges, including salary increases and bonuses, unnecessary furniture, and other expenses, to ensure their budgets are going up and the OPO will receive more funding the next year. The operating costs are exorbitant. . . . [T]he former CEO of LiveOnNY, Helen Irving, made $479,444 in 2020. The share of executive compensation at LiveOnNY ballooned from 4.7% of total expenses in 2021 to 7.1% of total expenses in 2023, or from $2,336,116 to $5,946,125 – an increase of nearly 155%. In 2023 alone, LiveOnNY CEO Leonard Achan made $1,110,396 in W-2 compensation while the OPO simultaneously had a loss of $1,978,941." *Id. at pars. 193-196;*

   e)  The excessive costs not only improperly inflated the costs included on the cost reports but improperly increased the SAC charged for each organ the OPO Defendants procured. The inflated SAC cost was then passed on to the transplant recipient's ultimate healthcare provider, including Federal Healthcare." *Id. at par. 199.*

Again, the Court did not consider the generalized allegations pertaining to "the OPO Defendants" group that were previously discussed and determined to be insufficient to satisfy the heightened pleading requirements of Federal Rule 9(b), and which, individually and collectively, cannot serve as basis for a violation of the FCA. *See In re Parkcentral Glob. Litig.*, 884 F.Supp.2d at 470-71; *Lakeway Reg'l Med. Ctr.*, 2020 WL 6146571, at *2.

The listed extracted allegations specific to LiveOnNY present a theory of liability for alleged excessive, unnecessary, and unreasonable costs: unnecessary and expensive real estate; exorbitant executive salaries, and; submitting cost of lobbyists on the cost reports submitted to Federal Healthcare. Chase theorizes these excessive costs result in "inflation" of organ acquisition costs, and these "inflated" costs are submitted to Federal Healthcare through the cost reports.

These listed allegations specific to LiveOnNY and taken as true fail to provide sufficient particularity even under a relaxed standard because Chase fails to identify a person involved in the alleged scheme to submit fraudulent excessive costs, (the "who"), and fail to present the "what," and "how" required. Instead, these assertions are generalized, conclusory allegations based upon Chase's opinion of what constitutes "excessive." *See Nunnally*, 519 F. App'x at 895.

Chase does not provide any representative examples of specific fraudulent acts conducted pursuant to the alleged engagement in incurring "excessive costs." *See Bennett*, 747 F.Supp.2d at 768 (quoting *Bledsoe*, 501 F.3d at 509–10 (6th Cir. 2007)). For each of the actions or schemes described in the listed excerpts, Chase does not provide any specific allegation of what makes the

identified costs and executive salaries inappropriate, excessive, or unlawful, nor does he cite any law or regulation prohibiting the cited expenditures.

Most importantly, these allegations do not amount to a scheme of fraudulent conduct unless LiveOnNY fraudulently submitted them to Federal Healthcare for reimbursement. To support this requirement, Chase states only "upon information and belief" these costs were included on LiveOnNY's cost reports. *ECF No. 37, pars. 192,212-213*. Chase does not identify any specific false claim for payment that LiveOnNY submitted to Federal Healthcare pertaining to any of these broad expenditure categories. Chase's allegation that these excessive costs inflated LiveOnNY's costs that were presented in cost reports is too nebulous and unsupported by specific factual detail or statistics to support a claim of FCA violation based upon this theory of liability.

For these reasons, the listed allegations, individually and collectively, cannot serve as basis for a violation of the FCA. With this deficiency, Chase fails to allege sufficient detail of elements (1) and (4) of the cause of action of violation of the FCA based upon this theory of liability. For this reason, the Court will not analyze whether Chase satisfies the pleading requirement of elements (2), scienter, and (3), materiality, based upon the theory of an alleged scheme of improper incurrence or submission of excessive costs to Federal Healthcare for reimbursement.

For these reasons, this theory of liability for violation of the FCA will be dismissed.

**(3)     Liability Theory of False Inflation of Statistics and Failure to Attempt to Recover Every Possible Organ**

Chase asserts FCA violation based upon the theory that OPOs failed to recover every possible organ as required by statute and fraudulently inflated reported statistics to reflect compliance with this statutory requirement. Again, the Court will analyze whether Chase sufficiently plead elements (1) and (4) of this theory of violation: (1) LiveOnNY made a false statement or engaged in a fraudulent course of conduct, and (4) that caused the government to pay out money. The Court will also only review those allegations specific to LiveOnNY and not the generalized allegations pertinent to "the OPO defendants."

In the Second Amended Complaint, pertinent to this alleged theory of liability, Chase alleges:

    a) For example, LiveOnNY does not try to recover from patients who only have one kidney available because it will lower their yield rate: if they only recover one kidney, their organ per donor is lower. So, if a donor only has one kidney, even though that kidney could be transplanted, LiveOnNY does not ask the donor's family to donate. This practice is also done by other OPOs. *ECF No. par. 203;*

    b) Further, LiveOnNY and NJ Sharing Network are located in some of the most densely populated areas of the United States. As such, they have some of the most opportunities for organ collection anywhere in the United States. But both OPOs generally transplant more organs than they collect because they do not put the time and effort into collection that they are required to. *Id. at par 204.*

Taken as true, these excerpts are generalized allegations of Chase's opinions of improper conduct. These generalized allegations do not describe a scheme of fraudulent conduct unless LiveOnNY fraudulently submitted them to Federal Healthcare for reimbursement. However, Chase does not provide any detail regarding how these allegations of improper conduct amounted to or resulted in a fraudulent scheme. *ECF No. 37, pars. 203-204.* Chase does not identify any specific false claim for payment that LiveOnNY submitted to Federal Healthcare.

For this reason, these allegations do not satisfy the heightened pleading requirements of Federal Rule 9(b), and, individually and collectively, cannot serve as basis for a violation of the FCA particular to LiveOnNY. *See In re Parkcentral Glob. Litig.*, 884 F.Supp.2d at 470-71; *Lakeway Reg'l Med. Ctr.*, 2020 WL 6146571, at *2. With this deficiency, Chase fails to allege sufficient detail of elements (1) and (4) of the cause of action of violation of the FCA based upon this theory of liability. For this reason, the Court will not analyze whether Chase satisfies the pleading requirement of elements (2), scienter, and (3), materiality, based upon the theory of an alleged scheme of improper incurrence or submission of excessive costs to Federal Healthcare for reimbursement.

For these reasons, this theory of liability for violation of the FCA will be dismissed.

**(4) Theory of Liability of Receipt of Improper Kickbacks**

Chase asserts FCA violation based upon the theory that LiveOnNY accepted payment from tissue processors for tissue collection more than the limited amount permitted under the Anti-Kickback Statute as a predicate to violation of the FCA. The Court will also only review those allegations specific to LiveOnNY and not the generalized allegations pertinent to "the OPO defendants."

In the Second Amended Complaint, pertinent to this alleged theory of liability, Chase alleges:

(a) While tissue processors can use their own staff to collect tissue, they use OPOs' staff given the OPOs' unique access to potential donors. Every hospital is mandated to report potential organ donors, who all are potential tissue donors, to the OPO in their DSA. The OPOs collect the tissue for free and make a profit when they are paid by the tissue processors. Part of that payment by the tissue processors is a kickback for the OPOs' access to organ donors, procedures that are paid by Federal Healthcare. *ECF No. 37, par. 207;*

(b) Even though the OPO Defendants are non-profit organizations, tissue procurement provides them with a significant source of revenue. For example, LiveOnNY earned $8,533,536 in revenue from tissue procurement efforts in 2023. *Id. at par. 208;*

(c) Additionally, while at both LiveOnNY and NJ Sharing Network, Chase was regularly part of meetings with the tissue processors where management stressed that LiveOnNY and NJ Sharing Network staff should prioritize tissue collection. The tissue processors maintained a very close relationship with both LiveOnNY and NJ Sharing Network, sponsoring seminars and charity walks. *Id. at par. 210;*

(d) Upon information and belief, the ultimate payment by the tissue processors to the OPO Defendants was for more than the cost of collection. This means tissue processors effectively paid the OPO Defendants a profit, which is a kickback for the OPO Defendants' access to the patients through organ collection paid for by Federal Healthcare. *Id. at par. 212.*

(e) Further, upon information and belief, the OPO Defendants would improperly include the costs for tissue donation on their cost reports and SAC fee buildup, improperly inflating both their cost report reimbursements and SAC fee paid by Federal Healthcare. *Id. at par. 213.*

All of these excerpts in support of this theory of liability are generalized allegations based upon "information and belief" and do not describe sufficient or reliable indicia of a fraudulent scheme. *ECF 37, pars. 212-213.* Chase must allege more than a generalized allegation of suspected fraudulent conduct based upon his "information and belief" to meet the pleading require-

ments of Federal Rule 9(b). Specific to LiveOnNY, Chase alleges only that it engaged in improper prioritization of tissue collection over organ recovery. This allegation falls short of describing a fraudulent scheme in violation of the FCA.

For these reasons, these allegations do not satisfy the heightened pleading requirements of Federal Rule 9(b), and, individually and collectively, cannot serve as basis for a violation of the FCA particular to LiveOnNY. *See In re Parkcentral Glob. Litig.*, 884 F.Supp.2d at 470-71; *Lakeway Reg'l Med. Ctr.*, 2020 WL 6146571, at *2.

### (5)    Liability Theory of Mismanagement and Improper Prioritization

Chase asserts FCA violation based upon the theory that "LiveOnNY struggled with mismanagement leading it to fail its mission of successfully transplanting organs" and engaged in "an illicit process to prioritize transplant centers that are part of the Greater NY Hospital System Association, by improperly classifying organs as "rush cases" so that NY area hospitals can accept these organs out-of-order from the transplant list. These "rush cases" rely on LiveOnNY depicting the organ as in worse quality as it actually is, and using a bypass code to bypass DonorNet for allocation." *ECF No. 37, pars. 214, 218*.

Taken as true, these generalized allegations supporting this theory of liability do not describe a scheme of fraudulent conduct unless LiveOnNY fraudulently submitted them to Federal Healthcare for reimbursement. Mismanagement and improper prioritization, alone, do not amount to a fraudulent scheme, and Chase does not provide any detail regarding how these allegations of improper conduct amounted to or resulted in a fraudulent scheme. Chase does not identify any specific false claim for payment that LiveOnNY submitted to Federal Healthcare that resulted from this improper conduct.

For these reasons, these allegations do not satisfy the heightened pleading requirements of Federal Rule 9(b), and, individually and collectively, cannot serve as basis for a violation of the FCA particular to LiveOnNY. *See In re Parkcentral Glob. Litig.*, 884 F.Supp.2d at 470-71; *Lakeway Reg'l Med. Ctr.*, 2020 WL 6146571, at *2.

## II.    Cause of Action of Reverse False Claims Act Violation (Claim III)

The Complaint contains a "Reverse False Claims" cause of action pursuant to 31 U.S.C. § 3729(a)(G). *ECF No. 37, pars. 340-344.*

However, Chase does not address nor allege any facts pertaining to this theory of liability or any actual element of this statutory violation. Chase does not provide any factual basis pertaining to this provision of the FCA. In his Response to the Motion to Dismiss, Chase withdraws the causes of action of reverse false claims in violation of § 3729(a)(1)(G).

For these reasons, the cause of action based upon an improper reverse False Claims Act violation against LiveOnNY will be dismissed.

## III.    Cause of Action of Violation of State Law (Claims V-XXXIV)

In the Second Amended Complaint, Chase asserts state law causes of action that mirror the alleged violations of the federal FCA. *ECF No. 37, pars. 350-533.*

These state law theories of liability fail for the same reasons Chase's theories of liability for violation of the federal FCA fail. Further, because this Court will dismiss all of Chase's theories of liability under the FCA, it will exercise its discretion to refrain from exercising any supplemental jurisdiction over a state cause of action. *See Heggemeier v. Caldwell Cnty., Tex.*, 826 F.3d 861, 872 (5th Cir. 2016) (per curiam); *Brookshire Bros. Holding, Inc. v. Dayco Prods., Inc.*, 554 F.3d 595, 602 (5th Cir. 2009).

For these reasons, any cause of action based upon a violation of state law against Live-OnNY will be dismissed.

### Amendment of Second Amended Complaint

Prior to dismissal of a Complaint, a court must "freely give leave [to amend the pleadings] when justice so requires." Fed. R. Civ. P. 15(a)(2). However, leave to amend is within the sound discretion of the court and can be appropriately denied when "it is clear that the defects [of

18

a complaint] are incurable." *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).

This Court provided Chase a final opportunity to cure all pleading defects prior to submission of this Motion to Dismiss. In response to the Court's admonition that Chase had one, final opportunity to amend the Complaint, he submitted the live Second Amended Complaint. Based upon this procedural posture and the Court's admonition, the Court finds Chase was provided ample opportunity to satisfy Federal Rule 15.

## CONCLUSION

For the reasons stated, LiveOnNY's Motion to Dismiss for Failure to State a Claim pursuant to Federal Rule 12(b)(6) is **GRANTED**.

It is so ORDERED.
SIGNED this 13th day of January, 2026.

_____
JASON  PULLIAM
UNITED STATES DISTRICT JUDGE