UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

UNITED STATES, EX REL; AND
STATE OF TEXAS,

   *Plaintiffs*,

PATREK CHASE,

*Relator*,

v.

   CASE NO.  SA-23-CV-00381-JKP

PARKLAND HEALTH AND
HOSPITAL SYSTEM, LOYOLA
UNIVERSITY MEDICAL CENTER,
SOUTHWEST TRANSPLANT
ALLIANCE, LIVEONNY, NEW
JERSEY SHARING NETWORK,
UNITED NETWORK FOR ORGAN
SHARING,

   *Defendants*.

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Loyola University Medical Center's (Loyola) Motion to Dismiss for Failure to State a Claim. *ECF Nos. 70,91*. Plaintiff/Relator Patrek Chase responded. *ECF No. 82*. Upon consideration, the Motion to Dismiss is **GRANTED**.

### FACTUAL BACKGROUND

On March 28, 2023, Relator Patrek Chase filed this action in the name of the United States and many individual states alleging violation of the False Claims Act (FCA).[1] *ECF No. 1*.

---

[1] "The FCA may be enforced not just through litigation brought by the Government itself, but also through civil qui tam actions that are filed by private parties, called relators, in the name of the Government." *Kellogg Brown & Root Servs., Inc. v. United States ex rel. Carter*, 575 U.S. 650, 653 (2015)(quotations omitted).

In the Second Amended Complaint, Chase names as Defendants entities in the organ donation and transplant system which include transplant centers, Organ Procurement Organizations (OPOs), and the United Network for Organ Sharing (UNOS).[2] *ECF No. 37*. In general terms, Chase alleges these named Defendants fraudulently billed Medicare and Medicaid (Federal Healthcare) in their role in the system-process of procuring and transplanting kidneys to patients in need. *Id. at par. 5*.

Particular to the action against Loyola, which is a nonprofit hospital and organ transplant center, Chase alleges that in this kidney-procurement system, transplant centers, mainly hospitals, are responsible for performing the transplants, caring for the patients on the waiting list, and choosing whether to accept organs for transplant. *Id. at par. 4*. Chase alleges Loyola double billed Medicare, charging costs for pre-transplant services both directly to Medicare and including the costs on Loyola's cost report for reimbursement from Medicare. Chase also alleges Loyola included other improper costs and inflated costs on Loyola's cost report to Medicare. *Id. at pars. 7,8,9*.

Chase filed this action on March 28, 2023. On June 20, 2025, the United States declined to intervene in this action. *ECF No. 25*. On June 25, 2025, the State of Texas and all other Plaintiff states declined to intervene in this action. *ECF No. 27*. This Court unsealed this action. On August 1, 2025, this Court permitted Chase to file the live Second Amended Complaint. Due to the age of the case at that time, this Court cautioned Chase no further amendments would be allowed. *ECF Nos. 33,37*.

Chase worked at Loyola from October 2020 until May 2022. Parsing the allegations and construing the Second Amended Complaint liberally, Chase contends Loyola committed the

---

[2] Chase named numerous entities and persons in the original Complaint. However, the only remaining Defendants are: LiveOnNY, New Jersey Sharing Network, Parkland Health and Hospital System, Southwest Transplant Alliance, Loyola University Medical Center, and United Network for Organ Sharing.

following violations of the False Claims Act: (1) it engaged in "aggressive practices" by providing organ transplants to "especially sick" patients or other patients who should not have received them; (2) double billing or inflating its cost reports to Medicare; (3) maintaining false records, and; (4) mirror causes of action under various state laws. *ECF No. 37 pars. 7,8,9,136-157*. Loyola now files this Motion to Dismiss for Failure to State a Claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

## LEGAL STANDARD

To provide opposing parties fair notice of the asserted cause of action and the grounds upon which it rests, every pleading must contain a short and plain statement of the cause of action which shows the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To satisfy this requirement, the Complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555-558, 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The focus is not on whether the plaintiff will ultimately prevail, but whether that party should be permitted to present evidence to support adequately asserted causes of action. *Id.*; *Twombly*, 550 U.S. at 563 n.8. Thus, to warrant dismissal under Federal Rule 12(b)(6), a Complaint must, on its face, show a bar to relief or demonstrate "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Fed. R. Civ. P. 12(b)(6); *Clark v. Amoco Prod. Co.,* 794 F.2d 967, 970 (5th Cir. 1986). Dismissal "can be based either on a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Frith v. Guardian Life Ins. Co.,* 9 F. Supp.2d 734, 737–38 (S.D.Tex. 1998). "Thus, the court should not dismiss the

claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint." *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999); *Vander Zee v. Reno,* 73 F.3d 1365, 1368 (5th Cir. 1996).

In assessing a Motion to Dismiss under Federal Rule 12(b)(6), the Court's review is limited to the Complaint and any documents attached to the Motion to Dismiss, which are also referred to in the Complaint and central to the plaintiff's claims. *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014). When reviewing the Complaint, the "court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)(quoting *Jones*, 188 F.3d at 324).

A complaint should only be dismissed under Federal Rule 12(b)(6) after affording every opportunity for the plaintiff to state a claim upon which relief can be granted, unless it is clear amendment would be futile. *Foman v. Davis,* 371 U.S. 178, 182 (1962); *Hitt v. City of Pasadena,* 561 F.2d 606, 608–09 (5th Cir. 1977); *DeLoach v. Woodley,* 405 F.2d 496, 496-97 (5th Cir. 1968). Consequently, when it appears a more careful or detailed drafting might overcome the deficiencies on which dismissal is sought, a Court must allow a plaintiff the opportunity to amend the Complaint. *Hitt,* 561 F.2d at 608–09. A court may appropriately dismiss an action with prejudice without giving an opportunity to amend if it finds that the plaintiff alleged his best case or amendment would be futile. *Foman,* 371 U.S. at 182; *DeLoach*, 405 F.2d at 496–97.

## DISCUSSION

Loyola contends this suit against it should be dismissed because Chase fails to allege any plausible claim under the FCA and fails to plead any claim with sufficient particularity as

required by Federal Rule 9(b). Loyola contends Chase fails to allege the elements of scienter and materiality, and if so construed, fails to allege these elements with sufficient particularity.

The FCA imposes liability on any person who knowingly submits or causes to be submitted a false claim for payment of government funds, knowingly makes or causes to be made a false record or statement material to a false claim or conspires to commit any such violation. 31 U.S.C. § 3729(a)(1)(A)–(C). The FCA also imposes liability on any person who knowingly makes or causes to be made a false record or statement material to an obligation to transmit money to the government or knowingly conceals an obligation to transmit money to the government (reverse FCA cause of action). *Id.* § 3729(a)(1)(G). Thus, the elements of liability under the FCA are: "'(1) there was a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter; (3) that was material; and (4) that caused the government to pay out money or to forfeit moneys due….'" *United States ex rel. Porter v. Magnolia Health Plan, Inc.*, 810 F. App'x 237, 240 (5th Cir. 2020) (quoting *Abbott v. BP Expl. & Prod., Inc.*, 851 F.3d 384, 387 (5th Cir. 2017)). Thus, a "false claim" in the FCA context consists of a demand for money that induces the government to disburse funds or otherwise suffer immediate financial detriment. *See id.*

### Legal Standard of Pleading in FCA Cases

A complaint filed under the FCA must meet the heightened pleading standard of Federal Rule 9(b), which requires a relator to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009); *United States ex rel. Integra Med Analytics, L.L.C.*, 816 Fed. App'x. 892, 896 (5th Cir. 2020). "What constitutes 'particularity' will necessarily differ with the facts of each case, 'at a minimum 'Rule 9(b) requires the who, what, when, where, and how to be laid out.'" *Grubbs*, 565 F.3d at 185; *Bowles v. Mars, Inc.*, No. 4:14-CV-2258, 2015 WL 3629717, at \*3 (S.D. Tex. June 10, 2015). This standard imposed in FCA cases ensures the complaint "provides defendants with fair notice of the plaintiffs' claims, protects defendants from harm to their

reputation and goodwill, reduces the number of strike suits, and prevents plaintiffs from filing baseless claims then attempting to discover unknown wrongs." *Grubbs*, 565 F.3d at 190.

To meet this pleading requirement, a relator's complaint that does not allege the details of an actually submitted false claim, may nevertheless survive by alleging particular details of a scheme to submit false claims paired with reliable details that present a strong inference those claims were actually submitted, such as dates and descriptions of recorded, but unprovided, services and a description of the billing system that the records were likely entered into. *Grubbs*, 565 F.3d at 190-91. This pleading requirement may be imposed less stringently when the alleged fraud occurred over an extended period and consists of numerous acts. *United States ex rel. Foster v. Bristol–Myers Squibb Co.*, 587 F.Supp.2d 805, 821 (E.D. Tex. 2008); *U.S. ex rel. Ruscher v. Omnicare, Inc.*, No. 4:08-CV-3396, 2014 WL 2618158, at *10 (S.D. Tex. June 12, 2014), *on reconsideration in part*, 2014 WL 4388726 (S.D. Tex. Sept. 5, 2014). However, even under this "relaxed" standard, the plaintiff must adhere to the basic rule that the complaint must include a sufficient factual basis to support the relator's belief that a defendant engaged in a fraudulent scheme. *Ruscher*, 2014 WL 2618158, at *11 (quoting *Foster*, 587 F.Supp.2d at 822).

## Application

Because the Second Amended Complaint does not allege the details of any individual false claim, but alleges fraud that occurred over an extended period of time and consists of numerous acts, the Court analyzes Chase's allegations under the *Grubbs* standard to determine if Chase sufficiently alleges a scheme to submit false claims, paired with reliable details, to present a strong inference those claims were actually submitted. This alleged scheme must include details such as dates and descriptions of each of the six specified theories and/or a description of the billing system that records of these improper charges were likely entered into. *See Grubbs*, 565 F.3d at 190-91.

I.      **Causes of Action of Violation of False Claims Act**

   **(1) Liability Theory of Engaging in "Aggressive Practices"**

In the Second Amended Complaint, pertinent to this alleged theory of liability, Chase alleges Loyola was "not running a safe transplant program." *ECF No. 37, par. 136*. Chase contends Loyola's transplant program had a "specialty in particularly sick patients," and for this reason, Loyola listed these patients on the organ donor list as "status 1A," which carries the highest priority, and which allows Loyola to perform transplants more often than others and obtain payment for doing so." *ECF No. 37, pars. 136-138*. Chase alleges Loyola did not properly screen and did not actually care if these patients' lives would be saved by the donation. Instead, Loyola focused on the billing and profitability of these patients. *Id*.

Next, Chase alleges Loyola received reimbursement for patients' discharge, even if the reason for discharge was death. Further, if the patient was actually discharged and then had complications because the transplant did not actually improve the patient's condition, the patient would return to Loyola for post-transplant complications. Loyola could then bill for these costly complications upon return. *Id. at par. 138*. Chase alleges "[m]any of the patients died soon after Loyola provided these improper transplants," and this fraudulent conduct put at least two lives in jeopardy: First, a patient who died from improper transplant; and second, a patient on the organ donor waitlist who could have received a life-saving organ transplant had Loyola not improperly transplanted the organ. *Id. at par. 139*. Chase alleges Loyola regularly ignored psychosocial "red flags" raised by both social work and psychiatric teams in determining whether a patient was ready for transplant. Loyola surgeons would regularly overrule the social workers and psychiatric teams *Id. at par. 140*. As an example of such improper conduct, Loyola alleges:

> a patient who had liver failure due to alcohol-related substance use disorder is only eligible for a liver transplant if they could show a period of sobriety or if a social work team believed the risk of recurrence is low…. In one instance, Loyola transplanted a liver into a patient with alcoholic liver disease and unresolved alcohol use problems. The patient did not get better and stayed in the hospital for 128 days. The patient was on Medicare, and all 128 days of the hospital stay were paid for by Medicare. If Loyola had not done the transplant, the patient would not have needed the 128-day hospital stay.

*Id. at pars. 141-42*.

Chase asserts he discussed this patient's extended hospital stay with Loyola's Inpatient Chief Medical Officer, Dr. Kevin Smith, who stated that "to increase transplant volume we need to be willing to take risks." Chase contends this statement shows definitively Loyola's view that patient risk was acceptable for Loyola to increase its transplant billings. *Id. at par. 143*.

### a. Particular Details of the Alleged Scheme

The Court first analyzes Loyola's arguments that pertain to elements one and four of Chase's FCA cause of action, that is whether Chase sufficiently plead: (1) Loyola made a false statement or engaged in a fraudulent course of conduct, and (4) that caused the government to pay out money.

Review of the Second Amended Complaint reveals Chase asserts several nonspecific allegations that do not satisfy the pleading requirements of an FCA cause of action. These include assertions that "multiple deaths" occurred in a particular timeframe; "[m]any … patients died soon after Loyola provided [their] transplants;" and some "liver graft failures" occurred at Loyola. These allegations describe Chase's opinions of failures in Loyola's system of choosing patients for organ or tissue transfer but fail to describe fraud or plead a particular fraudulent scheme. *ECF No. 37 at pars. 136-144*. For this reason, Chase fails to present a false claim in the FCA context that consists of Loyola's demand for money that induced Federal Healthcare to improperly disburse funds or otherwise suffer immediate financial detriment. *See U.S. ex rel. Shupe*, 759 F.3d at 385; *United States ex rel. King*, 232 F.R.D. at 572.

In addition, these allegations fail to provide sufficient particularity even under a relaxed standard because Chase fails to identify a person involved in the alleged fraudulent scheme (the "who"). The allegations lack necessary details regarding the "what" and "how" of the alleged schemes, and instead, assert generalized, conclusory allegations. *See Grubbs,* 565 F.3d at 190; *see also U.S. ex rel. Nunnally v. W. Calcasieu Cameron Hosp.*, 519 F. App'x 890, 895 (5th Cir. 2013). Chase does not provide any "representative examples of specific fraudulent acts conducted pursuant to" the schemes alleged. *See U.S. ex rel. Bennett v. Medtronic, Inc.*, 747

F.Supp.2d 745, 768-69 (S.D. Tex. 2010) (quoting *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 509–10 (6th Cir. 2007)). While these excerpts allege egregious and potential fraudulent acts, Chase falls short in alleging specifically that Loyola did, in fact, bill and receive money from Federal Healthcare that was in violation of the FCA, nor does Chase describe how such fraudulent billing occurred.

Because Chase provides examples of egregious, overly aggressive procurement behavior, only, but no description of specific persons involved and no description of any fraudulent billing to Federal Healthcare, the excerpts pertaining to Loyola, individually and collectively, cannot serve as basis for a violation of the FCA. Although Chase does not provide sufficient factual details to describe any fraud or fraudulent scheme, the Court will analyze the second prong of the test to determine sufficiency of pleading.

### b. Reliable Indicia that Lead to a Strong Inference Loyola Improperly Billed Federal Healthcare

For the second prong of the pleading requirements, Chase must allege reliable indicia that lead to a strong inference Loyola improperly billed Medicaid. *See Grubbs*, 565 F.3d at 190.

While claims for medically unnecessary treatment are actionable under the FCA, expressions of opinion or scientific judgments about which reasonable minds may differ are not. *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004). Clinical judgment may not be deemed false, for purposes of the False Claims Act, when there is only a reasonable disagreement between medical experts as to the accuracy of that conclusion, with no other evidence to prove the falsity of the assessment. *Id.*; *see also United States v. AseraCare, Inc.*, 938 F.3d 1278, 1281 (11th Cir. 2019). Further, "the False Claims Act should not be used to call into question a health care provider's judgment regarding a specific course of treatment." *U.S. ex rel. Phillips v. Permian Residential Care Ctr.*, 386 F.Supp.2d 879, 884 (W.D. Tex. 2005); *United States v. Vista Hospice Care, Inc.*, No. 07-cv-604, 2016 WL 3449833, at *17 (N.D. Tex. June 20, 2016).

9

The excerpts of allegations pertinent to Loyola do not allege any details of a fraudulent scheme under which Loyola made a false statement or engaged in a fraudulent course of conduct that caused Federal Healthcare to improperly pay out money. The cited allegations pertain to Chase's opinions that Loyola engaged in egregious behavior of offering transplants to only especially sick patients or to patients who were not in need. Taken as true, these allegations amount to improper behavior and improper and unsafe transplant practices; however, Chase does not allege any conduct that amounts to fraudulent conduct, nor does Chase provide explanation how this described improper conduct constitutes fraud upon Federal Healthcare or caused Federal Healthcare to improperly pay out money.

Chase provides no description of any fraudulent billing system, relying upon implication only that the alleged improper behavior and unsafe practices resulted in fraudulent billing to Federal Healthcare. This implication cannot satisfy Chase's pleading requirement under Federal Rule 9(b). *See Grubbs*, 565 F.3d at 191. For this reason, even if Chase had pleaded particular details of the alleged scheme, Chase does not provide the "reliable indicia" needed to satisfy the requirements of Federal Rule 9(b).

With these pleading deficiencies, the Court finds Chase fails to satisfy the pleading requirements of Federal Rule 9(b) to assert a violation of the FCA against Loyola based upon an alleged scheme of engaging in improper "aggressive practices" of providing kidney transplants or based upon treatment of only "particularly sick patients." With these deficiencies, Chase fails to allege sufficient detail of elements (1) and (4) of the cause of action of violation of the FCA based upon this theory of liability. For this reason, the Court will not analyze whether Chase satisfies the pleading requirement of elements (2), scienter, and (3), materiality, based upon this theory of liability.

For these reasons, this theory of liability for violation of the FCA will be dismissed.

**(2) Liability Theory of Submitting "Double Billing"**

Again, the Court will begin by analyzing whether Chase sufficiently plead elements (1) and (4) of this theory of violation: (1) Loyola made a false statement or engaged in a fraudulent course of conduct, and (4) that caused the government to pay out money.

In the Second Amended Complaint, pertinent to this alleged theory of liability, Chase alleges: Loyola engaged in "double billing" to get "reimbursement from Medicare twice for the same costs" and Loyola "inflated its cost report" by inflating time studies to "charge more staff time to Medicare." *ECF No. 37, pars. 150-151.*

### a.  Particular Details of the Alleged Scheme

To support these allegations of "double billing," Chase references and paraphrases a report from Transplant Solutions, a consultant Loyola hired to "review [its] transplant program and financial operations in December 2021." *ECF No. 37, pars. 152.* Chase alleges Transplant Solutions discovered and reported "'patients have been and are being billed for [certain] services,'" but "'costs reported on the Medicare Cost Report show little [of these] costs.'" *Id. at par. 153.* Chase further paraphrases the Transplant Solutions Report as concluding "'patients are billed for their deductible and coinsurance for … these costs'" when the costs "should go on the cost report. *Id. at par. 155.* "Transplant Solutions specifically noted, 'this is inappropriate, and these documents need to be modified.'" *Id.* Chase asserts "[i]n response to a separate Quality Assessment report from CareDx — which identified significant gaps in Quality and Patient Safety — Ryan Mayhew, the Regional Physician Quality Officer for Loyola, wrote, 'we essentially don't have a functioning quality program in the transplant realm and it's a major vulnerability.'" *Id. at par. 156.*

Pertinent to the allegation of inflated costs, Chase alleges the Transplant Solutions Report noted certain "cost centers raised questions." *Id. at par. 154.* Going further, Chase alleges these questions were: (a) "Nurse Administration is allocated based on RN FTEs [full time employees] and is only allocated to Liver Acquisition. The Department has costs that should be allocated to all of the OACC [organ acquisition cost center] departments;" (b) "Clinical Pastoral Education [the primary method of training hospice chaplains] is based on Time Spent and is only allocated

to Lung Acquisition. If the process is part of the Live Donor evaluation process or the pre-transplant evaluation process, it may be allowable. However, it is questionable;" and; (c) "Pharmacy Residency Program is based on Program FTE's and is allocated to Heart and Lung acquisition only. Please review for appropriateness." *Id*.

Upon review, the Court finds this quoted and paraphrased language does not suggest or support Chase's allegations of double-billing, but only reports that Loyola billed patients' insurance, rather than putting these costs on its cost reports to Medicaid. *Id. at pars. 153-155*. The language Chase paraphrases from the Transplant Solutions Report does not provide support for an alleged fraudulent billing scheme, but instead, appears to show Loyola is not billing Federal Healthcare, when it should be, or is just not billing correctly. The excerpts from the Transplant Solutions Report pertaining to Chase's allegations of inflated costs only amount to Transplant Solutions's findings that some costs were allocated too narrowly, that is, to only one specific department, rather than allocated more broadly, or were just misallocated. Therefore, these findings do not support an allegation of "double billing."

Thus, taking Chase's allegations as true and his recitations of the Transplant Solutions Report as accurate and true, these excerpts do not satisfy Chase's pleading requirement to show Loyola committed fraud on Federal Healthcare by submitting improper charges or by inducing it to improperly pay out money. Instead, these excerpts from the Transplant Solutions Report could only possibly demonstrate Loyola submitted charges for transplants for recovery under a patient's insurance rather than recovery through cost reports. Even accepting this as true, this Transplant Solutions Report and Chase's allegations lack any reference to fraud and fail to describe how the relied-upon behavior constituted fraud.

These allegations describe Chase's opinions of Loyola's improper billing practices or Chase's disagreement with Loyola's doctors' judgment or treatment but fail to describe fraud or plead a particular fraudulent scheme. These allegations are not based upon Chase's personal knowledge of any fraud he accuses Loyola of committing, but instead, rest entirely on an investigative report from a company hired by Loyola or his personal opinion. For these reasons,

12

Chase fails to present a false claim in the FCA context that consists of Loyola's demand for money that induced Federal Healthcare to improperly disburse funds or otherwise suffer immediate financial detriment. *See U.S. ex rel. Shupe*, 759 F.3d at 385; *United States ex rel. King*, 232 F.R.D. at 572.

In addition, these allegations fail to provide sufficient particularity even under a relaxed standard because Chase fails to identify a person involved in the alleged fraudulent scheme (the "who"). The allegations lack necessary details regarding the "what" and "how" of the alleged schemes, and instead, assert generalized, conclusory allegations. *U.S. ex rel. Nunnally*, 519 F.App'x at 895. Chase does not provide any "representative examples of specific fraudulent acts conducted pursuant to" the schemes alleged. Accepting these excerpts as true, while they may allege egregious and potential fraudulent acts, Chase falls short in alleging specifically that Loyola did, in fact, bill and receive money from Federal Healthcare that was in violation of the FCA, and fail to describe how such fraudulent billing occurred.

Because the Transplant Solutions Report and Chase's allegations could describe improper billing practices, only, and provide no description of specific persons involved and no description of how any fraudulent billing to Federal Healthcare occurred, these allegations pertaining to Loyola, individually and collectively, cannot serve as basis for a violation of the FCA. *See Grubbs, 565 F.3d at 190-191*. Although Chase does not provide sufficient factual details to describe any fraud or fraudulent scheme, the Court will analyze the second prong of the test to determine sufficiency of pleading.

b. **"Reliable Indicia" of a Fraudulent Scheme**

Chase's allegations of double billing fail to plead "reliable indicia" of a fraudulent scheme or that support an allegation that Loyola submitted fraudulent claims to Federal Healthcare. Chase's allegations and the Transplant Solutions Report provide no details or facts that would amount to a fraudulent scheme unless Loyola fraudulently submitted bills to Federal Healthcare for reimbursement. Chase relies solely upon inference and conjecture to support an implication that Loyola did fraudulently bill Federal Healthcare. Chase does not identify any

13

specific false claim for payment that Loyola submitted to Federal Healthcare pertaining to any of these cited incidents. Inference and implication cannot satisfy the pleading requirements of Federal Rule 9(b), and these allegations are too nebulous and unsupported by specific factual detail to support a claim of FCA violation based upon this theory of liability. *See Grubbs, 565 F.3d at 190*. Because Chase's pleading lacks both particular details and reliable indicia, Chase fails to plead anything that provides a strong inference that Loyola violated the FCA.

For these reasons, these allegations, individually and collectively, cannot serve as basis for a violation of the FCA. With this deficiency, Chase fails to allege sufficient detail to support elements (1) and (4) of the cause of action of violation of the FCA based upon this theory of liability. For this reason, the Court will not analyze whether Chase satisfies the pleading requirement of elements (2), scienter, and (3), materiality, based upon the theory of an alleged scheme of improper incurrence or submission of excessive costs to Federal Healthcare for reimbursement.

Consequently, this theory of liability for violation of the FCA will be dismissed.

### (3) Liability Theory of Maintaining False Records

Again, the Court will analyze whether Chase sufficiently plead elements (1) and (4) of this theory of violation: (1) Loyola made a false statement or engaged in a fraudulent course of conduct, and (4) that caused the government to pay out money.

In the Second Amended Complaint, pertinent to this alleged theory of liability, Chase alleges: Loyola violated § 3729(a)(1)(B), which imposes liability on one who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim."

The elements of a false-record claim under § 3729(a)(1)(B) largely track those of a presentment claim under § 3729(a)(1)(A). *See United States ex rel King v. Solvay Pharm., Inc.*, 871 F.3d 318, 324 (5th Cir. 2017). "To allege falsity under § 3729(a)(1)(B), the relator must allege 'the recording of a false record' that is material to a claim for payment." *U.S. ex rel.*

*Hueseman v. Professional Compounding Ctrs. of Am., Inc*., 664 F.Supp.3d 722, 742 (W.D. Tex. 2023). The false statement need not be made to the Government, so long as the defendant knew it would be material to a payment by the Government. *See id. (citing Allison Engine Co. v. United States ex rel. Sanders*, 553 U.S. 662, 671–72 (2008). To support this theory of liability, Chase alleges:

> Loyola kept three sets of books to hide this fraud. First, Loyola kept the real data on organ donation failure rates in CareDX and used this data for internal reports. Second, Loyola kept even more details in an Excel file. The Chief of Abdominal Transplant Surgeon, Dr. Luis Fernandez, instructed the Quality Manager, Deborah Parilla, to create a separate dashboard that both she and [Chase] were told explicitly "not to share with anyone externally." 146. But Loyola had different data on organ donation failure rates in their Electronic Medical Record (EMR), Epic. The Epic data showed either fake or less detailed information that hid the true high rate of organ donation failure at Loyola. 147. For example, if Loyola did a failed transplant where the patient died in the operating room, the internal records would call it a graft failure and transplant related death. However, Loyola did not record this as an official transplant death in Epic, claiming the transplant "technically never worked or achieved anastomosis." This allowed Loyola to report data outside of Loyola that hid the true problems with Loyola's transplant program. 148. Loyola's internal Surgical Morbidity and Mortality Cases tracker recorded any complication or death related to transplants. These included post-surgical infections, returns to the operating room post-procedure during the same hospital admission, graft failure, and death. For the period March 1, 2022 to April 17, 2022, a period of 48 days, Loyola recorded 60 separate incidents. Surgeon Raquel Garcia-Roca was involved in 33 separate incidents. Surgeon David Lee was involved in 23 separate incidents. 149. Relator Chase raised his concerns with the number of transplant patient deaths in the OR with Loyola's Vice President of Finance, Manmeet Taneja. Taneja responded that "deaths still count as discharges" implying that Loyola's interests were still met as Loyola still received payment if the patient died.

*ECF No. 37, pars.145-149.*

### a.     Particular Details of the Alleged Scheme

Upon review, the Court finds this quoted and paraphrased language does not suggest or support any finding of fraud upon Federal Healthcare. Chase's quoted allegations imply only nefarious behavior of "maintaining false records." However, even accepting these allegations as true and even presuming this behavior was improper, Chase does not allege these behaviors amounted to fraud upon Federal Healthcare. Chase does not allege Loyola actually submitted

specific fraudulent requests for payment to Federal Healthcare, but instead, merely implies Loyola submitted false records.

Thus, taking Chase's allegations as true, these allegations do not satisfy Chase's pleading requirement to present details of acts by Loyola that constituted fraud on Federal Healthcare by submitting improper charges or by inducing it to improperly pay out money. Even accepting these allegations as true, Chase's allegations lack any reference to fraud and fail to describe how the relied-upon behavior constituted fraud. These allegations describe Chase's opinions of Loyola's improper record keeping but fail to describe Chase's personal knowledge of any fraud he accuses Loyola of committing. For these reasons, Chase fails to present a false claim in the FCA context that consists of Loyola's demand for money that induced Federal Healthcare to improperly disburse funds or otherwise suffer immediate financial detriment. *See U.S. ex rel. Shupe*, 759 F.3d at 385; *United States ex rel. King*, 232 F.R.D. at 572.

In addition, these allegations fail to provide sufficient particularity even under a relaxed standard because Chase fails to identify a person involved in the alleged fraudulent scheme (the "who"). The allegations lack necessary details regarding the "what" and "how" of the alleged schemes, and instead, assert generalized, conclusory allegations. *U.S. ex rel. Nunnally*, 519 F. App'x at 895. Chase does not provide any representative examples of specific fraudulent acts conducted pursuant to the schemes alleged. While these excerpts allege egregious and potential fraudulent acts, Chase falls short in alleging specifically that Loyola did, in fact, bill and receive money from Federal Healthcare that was in violation of the FCA, nor does Chase describe how such fraudulent billing occurred. Chase does not identify any statute, regulation, or other source of law that Loyola violated.

Although Chase does not provide sufficient factual details to describe any fraud or fraudulent scheme, the Court will analyze the second prong of the test to determine sufficiency of pleading.

    **b.    Reliable Indicia of a Fraudulent Scheme**

Chase's allegations of false record-keeping fail to plead "reliable indicia" of a fraudulent scheme or that support an allegation that Loyola submitted fraudulent claims to Federal Healthcare. Chase's allegations provide no detail or facts that would amount to a fraudulent scheme unless Loyola fraudulently submitted false records to Federal Healthcare to induce improper reimbursement. Chase relies solely upon inference and conjecture to support an implication that Loyola fraudulently submitted false records to Federal Healthcare. Chase does not identify any specific incident of submission of a false record to induce improper payment. This implication cannot satisfy the pleading requirements of Federal Rule 9(b), and these allegations are too nebulous and unsupported by specific factual detail to support a claim of FCA violation based upon this theory of liability. *See Grubbs*, 565 F.3d at 190. Because Chase's pleading lacks both particular details and reliable indicia, Chase fails to plead anything that provides a strong inference that Loyola violated the FCA..

For these reasons, these allegations, individually and collectively, cannot serve as basis for a violation of the FCA. With this deficiency, Chase fails to allege sufficient detail to support elements (1) and (4) of the cause of action of violation of the FCA based upon this theory of liability. For this reason, the Court will not analyze whether Chase satisfies the pleading requirement of elements (2), scienter, and (3), materiality, based upon the theory of an alleged scheme of improper incurrence or submission of excessive costs to Federal Healthcare for reimbursement.

Consequently, this theory of liability for violation of the FCA will be dismissed.

## II.    Cause of Action of Reverse False Claims Act Violation

The Complaint contains a "Reverse False Claims" cause of action pursuant to 31 U.S.C. § 3729(a)(G).

However, Chase does not address nor allege any facts pertaining to this theory of liability or any actual element of this statutory violation. Chase does not provide any factual basis

pertaining to this provision of the FCA. In his Response to the Motion to Dismiss, Chase withdraws the causes of action of reverse false claims in violation of § 3729(a)(1)(G).

For these reasons, any theory of liability based upon an improper reverse False Claims Act violation against Loyola will be dismissed.

### III.    Cause of Action of Violations of State Law

In the Second Amended Complaint, Chase asserts state law causes of action that mirror the alleged violations of the federal FCA.

These state law theories of liability are subject to the pleading requirements of Federal Rule 9(b), and therefore, fail for the same reasons Chase's theories of liability for violation of the federal FCA fail. *See U.S. ex rel. Foster*, 587 F.Supp.2d at 827. Further, because this Court will dismiss all of Chase's theories of liability under the FCA, it will exercise its discretion to refrain from exercising any supplemental jurisdiction over a state cause of action. *See Heggemeier v. Caldwell Cnty., Tex.*, 826 F.3d 861, 872 (5th Cir. 2016)(per curiam); *Brookshire Bros. Holding, Inc. v. Dayco Prods., Inc.*, 554 F.3d 595, 602 (5th Cir. 2009).

For these reasons, any theory of liability based upon a violation of state law against Loyola will be dismissed.

### Amendment of Second Amended Complaint

Prior to dismissal of a Complaint, a court must "freely give leave [to amend the pleadings] when justice so requires." Fed. R. Civ. P. 15(a)(2). However, leave to amend is within the sound discretion of the court and can be appropriately denied when "it is clear that the defects [of a complaint] are incurable." *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).

18

This Court provided Chase a final opportunity to cure all pleading defects prior to submission of this Motion to Dismiss. In response to the Court's admonition that Chase had one final opportunity to amend the Complaint, he submitted the live Second Amended Complaint. Based upon this procedural posture and the Court's admonition, the Court finds Chase was provided ample opportunity to satisfy Federal Rule 15.

## CONCLUSION

For the reasons stated, Loyola's Motion to Dismiss for Failure to State a Claim pursuant to Federal Rule 12(b)(6) is **GRANTED**.

It is so ORDERED.
SIGNED this 13th day of January, 2026.

_____
JASON  PULLIAM
UNITED STATES DISTRICT JUDGE

19